STATE of Missouri, Respondent,

v.

Thurman J. FULLER, Appellant.

Thurman J. FULLER, Appellant,

v.

STATE of Missouri, Respondent.

Nos. WD 44548, WD 47575.

Missouri Court of Appeals,
Western District.

June 28, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 2, 1994.

James F. Speck, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Mary Moulton Bryan, Asst. Atty. Gen., Jefferson City, for respondent.

Before ULRICH, P.J., and BRECKENRIDGE and SPINDEN, JJ.

BRECKENRIDGE, Judge.

Thurman Fuller appeals from his convictions for murder in the second degree, § 565.021, RSMo 1986 [1]; first degree assault, § 565.050; and two counts of armed criminal action, § 571.015. He was sentenced to

twenty-five years for the murder, thirty years for the assault and ten years for each armed criminal action, to be served consecutively. Thurman Fuller also appeals the denial of his Rule 29.15 motion for post-conviction relief. Thurman Fuller raises three points on appeal. He claims that the trial court erred in denying his motion for judgment of acquittal on the ground of insufficient evidence and in instructing the jury on the lesser included offense of second degree murder. Thurman Fuller further claims that the motion court erred in overruling his Rule 29.15 motion for post-conviction relief because he was denied his right to effective assistance of counsel. The convictions and the judgment on the post-conviction motion are affirmed.

The facts are viewed in the light most favorable to the verdict. *State v. Purlee,* 839 S.W.2d 584, 587 (Mo. banc 1992). On the night of November 25, 1989, Gregory Dean and his brother, Charles Dean, were playing dominoes at Gregory Dean's apartment. They were joined sometime later by two others, Frances Beverly and Bruce Reynolds. Gregory Dean left the table to answer the telephone in the bedroom. A second telephone call, immediately after the first, was from Gregory Dean's estranged wife. During the conversation, the bedroom door opened and Gregory Dean saw Thurman Fuller standing in the doorway. Gregory Dean was acquainted with Thurman Fuller, as he had lived with Thurman's sister, Clara Fuller. Ms. Fuller left Gregory Dean because he beat her, a fact of which her brothers were aware. Thurman Fuller said he wanted to talk with Gregory Dean, and Gregory asked him to wait until he was finished with his telephone conversation. When Gregory Dean told his wife he was talking with Thurman, Clara's brother, Thurman Fuller disconnected the telephone.

After the telephone was disconnected, Gregory Dean heard a gunshot. He turned and saw Thurman Fuller leaving the room. Gregory Dean then saw George Fuller, Thurman's brother, crouched behind Thurman's coat with a sawed-off shotgun. Gregory Dean was hit with a second gunshot which

1. All statutory citations are to Revised Missouri Statutes 1986, unless otherwise indicated.

knocked him to the ground. He saw George Fuller take the shells out of the gun and run out of the bedroom door.

Gregory Dean crawled out of the bedroom and saw his brother Charles Dean lying in a pool of blood in the kitchen. Gregory Dean was pulling the telephone toward himself when it rang. He pulled the receiver off the hook and discovered it was his wife calling back. He told her he had been shot and instructed her to call the police.

Gregory Dean's neighbor, Vernedia McIntosh, testified that at approximately midnight that evening, "I heard somebody come up the back, and I seen a person standing at my back window, like two people." She shared the back porch with Gregory Dean. Ms. McIntosh heard these people talking on the porch for about five minutes and described the voices as those of two men. Both she and her husband, Donald McIntosh, testified that they heard the back door slam open and thereafter two gunshots. After the gunshots, they saw Frances Beverly running from the apartment. Mr. McIntosh heard Ms. Beverly say "they shot Greg." The McIntoshes did not see anyone else leave the building. Mr. McIntosh entered the apartment and saw Charles Dean lying in the kitchen. He then found Gregory Dean who told him "Clara's brothers" had shot him.

Bruce Reynolds testified that he was playing dominoes with Frances Beverly and both Charles and Gregory Dean on the evening of November 25, 1989. Gregory Dean left the table and went to the back of the apartment. Later, Mr. Reynolds heard a knock on the back door and thought Gregory Dean had answered it. A few seconds later, Charles Dean got up and went to the back door. Mr. Reynolds then heard a commotion and saw panic on Frances Beverly's face. She ran to the front door and he followed her out of the house. He heard gunshots after he left the apartment. Ms. Beverly returned to the apartment and he went home.

Charles Dean bled to death from a single gunshot wound to the abdomen. Gregory Dean was shot in the back and was hospitalized for approximately three weeks. He testified that he underwent three surgeries and was still receiving therapy at the time of the trial. One of his lungs was destroyed, two of his ribs were removed and five metal discs were placed in his spine as a result of the gunshot wound.

Despite his claim that he was present at the apartment but not involved in the shooting of Charles and Gregory Dean, Thurman Fuller did not contact the police to report the incident. He was later arrested at his father's funeral. After seeing the detectives at the funeral home, he and his brother, George Fuller, ran to their car where they were apprehended by other police officers.

At the trial, the defendant's motions to dismiss at the end of the State's evidence and at the close of all of the evidence were overruled. The jury returned verdicts of guilty and Thurman Fuller was sentenced to twenty-five years for murder in the second degree, ten years for each count of armed criminal action and thirty years for assault in the first degree. The sentences were to run consecutively. Thurman Fuller filed a timely notice of appeal. Mr. Fuller filed a pro se Rule 29.15 post-conviction motion. Thereafter, counsel was appointed and an amended motion was filed. An evidentiary hearing was held and Thurman Fuller's motion was denied. A timely appeal followed. This case is a consolidation of the appeals from the judgment of conviction and the denial of Thurman Fuller's Rule 29.15 motion.

## I.

As his first point on appeal, Thurman Fuller asserts that the trial court erred in overruling his motions for judgment of acquittal.[2] He claims there was insufficient evidence to support a conviction of second degree murder, first degree assault and armed criminal action by aiding his brother in shooting the

---

**2.** As the State notes in its brief, Thurman Fuller presented evidence in his own behalf after the trial court denied his motion for judgment of acquittal at the close of the State's case. Therefore, this court only considers whether the trial court erred in overruling Thurman Fuller's motion for judgment of acquittal made at the close of all the evidence. *State v. Trujillo*, 869 S.W.2d 844, 846 (Mo.App.1994).

two victims.[3] Thurman Fuller contends that mere presence and flight from the scene of the crime or presence and opportunity to commit the crime are not sufficient to sustain a guilty verdict. *State v. Prier*, 634 S.W.2d 197, 200 (Mo. banc 1982). While this is correct, this case involves more than mere presence and flight from the scene.

When considering whether the evidence is sufficient to support a criminal conviction, this court views all of the evidence and inferences favorable to the State as true and disregards all of the evidence and inferences to the contrary. *State v. Grim*, 854 S.W.2d 403, 405 (Mo. banc), *cert. denied*, ⸺ U.S. ⸺, 114 S.Ct. 562, 126 L.Ed.2d 462 (1993). The appellate court's review is limited to determining whether there is enough evidence from which a reasonable juror could find the defendant guilty beyond a reasonable doubt. *Id.*

In this case, a reasonable juror could find beyond a reasonable doubt that Thurman Fuller aided his brother in shooting both Charles and Gregory Dean, killing the former. Thurman Fuller had a motive. His sister, Clara Fuller, had dated Gregory Dean and claimed that he had beaten her. The Fullers were described as a close family. Testimony showed that two men were heard at the back door of Gregory Dean's apartment prior to the door opening and the sound of gunshots. Thurman Fuller admitted that he was in the apartment. Thurman Fuller disconnected the telephone after Gregory Dean told his wife that it was "Thurman" at the bedroom door. Although there was conflicting testimony about what went on during the course of the shooting, the credibility of the witnesses is a question for the jury. *State v. Dulany*, 781 S.W.2d 52, 55 (Mo. banc 1989). Thurman Fuller fled the scene and never called the police to help Gregory Dean, whom he described as a "buddy." Gregory Dean also told his neighbor, who entered the apartment directly after the shooting, that "Clara's brothers" had shot him.

A person is criminally responsible for the conduct of another when:

Either before or during the commission of an offense with the purpose of promoting the commission of an offense, he aids or agrees to aid or attempts to aid such other person in planning, committing or attempting to commit the offense.

Section 562.041.1(2). An aider and abettor is someone who acts with the active participants in the crime by any form of affirmative advancement of the purpose. *State v. McGowan*, 789 S.W.2d 242, 243 (Mo.App. 1990). Thurman Fuller disconnected the telephone prior to the shooting when Gregory Dean told his wife that Thurman was there. Thurman Fuller was standing in the doorway blocking Gregory Dean's view of George Fuller, who then shot Gregory. Thurman Fuller never called the police and attempted with this same brother to avoid apprehension by the police.

This court believes that the evidence is sufficient to support a finding of guilty beyond a reasonable doubt on each count. Point I is denied.

## II.

Thurman Fuller argues in his second point on appeal that the trial court erred in instructing the jury on the lesser offense of second degree murder because there is no evidence that Thurman Fuller, if guilty at all, was guilty only of that offense. Thurman Fuller interprets § 556.046.2 incorrectly. The statute states that the court shall not instruct down to an included offense "unless there is a basis" to acquit the defendant of the offense charged and convict him of the lesser offense. Section 556.046.2. The test is not whether Thurman Fuller can be found guilty of only first or second degree murder, but whether there is an evidentiary basis for acquitting him of first degree murder and convicting him of second degree murder. *State v. Stepter*, 794 S.W.2d 649, 652 (Mo. banc 1990).

---

**3.** Although Thurman Fuller did not clearly allege that there was insufficient evidence for the convictions of armed criminal action, because those charges are so similar to the other crimes of which he was also convicted, we will review this allegation ex gratia.

An element of first degree murder is deliberation. Section 565.020.1. Second degree murder only requires that the defendant "knowingly cause[ ] the death of another person or, with the purpose of causing serious physical injury to another person, cause[ ] the death of another person." Section 565.021.1. When there is conflicting testimony, whether there is deliberation is a fact question for the jury. *Stepter,* 794 S.W.2d at 653. Most often, deliberation must be inferred from the circumstances attending the murder. *State v. Light,* 835 S.W.2d 933, 936 (Mo.App.1992). The jury could infer deliberation by the facts cited in Point I, but these facts could also support a lack of deliberation. By the jury's verdict, it found the latter. Point II is denied.

### III.

As his third point on appeal, Thurman Fuller argues that the motion court erred in denying his Rule 29.15 motion for postconviction relief. He claims that he was denied his right to effective assistance of counsel and to due process of law. Specifically, Thurman Fuller claims that his trial counsel 1) failed to impeach Gregory Dean on cross-examination with his prior inconsistent statements made on videotape, 2) failed to prepare Thurman Fuller to testify and to make an informed decision as to whether or not to testify, and 3) failed to interview Frances Beverly and Gregory Dean as witnesses prior to trial.

This court's review of the motion court's denial of Thurman Fuller's Rule 29.15 motion is limited to a determination of whether the motion court's findings of fact and conclusions of law are clearly erroneous. *Leisure v. State,* 828 S.W.2d 872, 873–874 (Mo. banc), *cert. denied,* — U.S. —, 113 S.Ct. 343, 121 L.Ed.2d 259 (1992); Rule 29.15(j). The findings and conclusions of the motion court are clearly erroneous "only if, after review of the entire record, the appellate court is left with the definite and firm impression that a mistake has been made." *Leisure,* 828 S.W.2d at 874.

In order to successfully prove ineffective assistance of counsel, a movant must show both 1) that his or her attorney was deficient beyond an objective reasonable standard considering all of the circumstances, and 2) that the movant was prejudiced by his or her counsel's deficiency. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). In establishing that the attorney was deficient, the movant must overcome the strong presumption that the counsel was competent. *Id.* at 690, 104 S.Ct. at 2065. To demonstrate prejudice, the movant must show that there is a reasonable probability that, but for the errors, the result would have been different. *Id.* at 693, 104 S.Ct. at 2067. This probability exists when the likelihood of a different result is sufficient to undermine confidence in the outcome of the trial. *Id.*; *Leisure,* 828 S.W.2d at 875.

Thurman Fuller's first claim is that the trial counsel did not impeach Gregory Dean with prior statements which were inconsistent with his testimony at trial. Gregory Dean testified at trial that he saw George Fuller "bent down up under Thurman with the shotgun." Gregory Dean stated at trial that he saw George Fuller with a sawed-off shotgun in his hands and that, after shooting Gregory, George Fuller emptied the shells out of the gun. Prior to trial, Gregory Dean stated on videotape that after one of the shots, he saw "George" at the doorway behind Thurman Fuller. When asked whether he had seen anyone armed with a weapon, Gregory Dean had answered in the negative.

Thurman Fuller's trial counsel testified at the motion hearing that he had not watched the videotaped statement of Gregory Dean prior to trial. Assuming *arguendo* that counsel was deficient in not watching the videotape prior to trial, the attorney's action was not sufficiently prejudicial such that there would have been a different result of the trial had he viewed the videotape. Although Gregory Dean's testimony at trial was inconsistent with his videotaped statement given to the police a few days after the incident, the inference of his videotaped statement was that he had been shot by George Fuller. Gregory Dean's statement was that, except for seeing Frances Beverly running out the door, the only two persons present at the moment he was shot were George Fuller and

Thurman Fuller. Gregory Dean stated to the police that Thurman Fuller was at the door of the bedroom when Gregory Dean heard the first shot. Gregory Dean then saw George Fuller behind Thurman at the bedroom door and was at once hit with a second shot.

Thurman Fuller did not claim that his brother was at the apartment but did not have a gun. Thurman Fuller's defense was that he came to the apartment alone, that he did not ever see his brother or anyone other than Gregory Dean at the apartment, that he left the apartment upon hearing the first shot in the kitchen, and that he did not aid anyone in shooting Charles or Gregory Dean. Even with inconsistencies in Gregory Dean's testimony there was still unimpeachable testimony of Gregory Dean, Bruce Reynolds, Vernedia McIntosh and Donald McIntosh from which the jury could find that Thurman Fuller came to the apartment at the same time as another man; that he was in the same room as his brother at the time Gregory Dean was shot and that if he fled the apartment as he claimed, he would have passed by an open kitchen doorway where he claims the perpetrator of the crime was located, all contrary to Thurman Fuller's defense. Considering the nature of the inconsistencies in Gregory Dean's testimony and the other evidence at trial, Thurman Fuller has not proven a reasonable probability that, but for the failure of trial counsel to impeach Gregory Dean's testimony with the videotaped statement, the result of the trial would have been different. The motion court was not clearly erroneous in denying Thurman Fuller's claim of ineffective assistance of counsel for failure to impeach Gregory Dean.

The second claim of ineffective assistance of counsel advanced by Thurman Fuller is that his trial counsel did not prepare him to testify nor adequately advise him so that he could make an informed decision as to whether or not to testify. The trial counsel testified at the motion hearing that he discussed with Thurman Fuller his right not to testify as well as the benefits and consequences of testifying on his own behalf. When asked whether he had prepared Thurman Fuller to testify, the trial counsel stated "we discussed

everything as far as I can recall, everything I thought that I would do on direct examination which he followed beautifully and also discussed what we anticipated the prosecutor would cover on cross-examination."

Thurman Fuller specifically argues that his trial counsel did not familiarize him with the diagram of the apartment used by the prosecutor at trial. To the contrary, his trial counsel testified that he and Thurman went over where the rooms were located on the diagram and "[a]t no time did Thurman ever tell me that the diagram that was submitted was incorrect." The motion court found that trial counsel provided effective assistance of counsel in his preparation of Thurman Fuller to testify. Deference is given to the motion court's judgment of the credibility of witnesses. *State v. Twenter,* 818 S.W.2d 628, 635 (Mo. banc 1991); *State v. Bailey,* 839 S.W.2d 657, 662 (Mo.App.1992).

Lastly, Thurman Fuller claims that his trial counsel failed to perform an adequate investigation to prepare for trial. Thurman Fuller states that his trial counsel did not make sufficient effort to locate Frances Beverly to testify at trial. To show that his counsel's performance was deficient in failing to contact a witness, Thurman Fuller must show that the witness would have been located through reasonable investigation, that she would testify if called, and that the testimony would have provided a viable defense. *Twenter,* 818 S.W.2d at 640; *Canterbury v. State,* 781 S.W.2d 107, 110 (Mo.App. 1989).

At the motion hearing Thurman Fuller's trial counsel testified that he had attempted to locate Frances Beverly and had asked for assistance from Thurman Fuller, but was unable to locate her. The motion court found this evidence to be true and relied upon it in its findings of fact and conclusions of law. In addition, there was evidence at trial that despite the efforts of investigators from the police department and prosecutor's office, Frances Beverly was unable to be located prior to trial. Thurman Fuller failed to show ineffective assistance in his trial counsel's failure to contact Frances Beverly prior to trial.

Thurman Fuller also claims that his trial counsel was inadequate for failing to take Gregory Dean's deposition prior to trial. This allegation was contained in a motion which, whether supplemental or amended, was filed 150 days after the first amended motion. Sixty days is the maximum period within which an amended motion can be filed. Rule 29.15(f). Time limits governing post-conviction motions are considered mandatory and reasonable. *State v. Ervin*, 835 S.W.2d 905, 929 (Mo. banc 1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1368, 122 L.Ed.2d 746 (1993). The untimeliness of Thurman Fuller's second amended or "supplemental" motion acts as a complete bar to consideration by this court of the allegations contained in the motion. *Sanders v. State*, 807 S.W.2d 493, 494 (Mo. banc 1991). Point III is denied.

The convictions and the judgment on the post-conviction motion are affirmed.

All concur.