STATE of Missouri, Respondent,

v.

Michael A. GORDON, Appellant.

Nos. WD 48131, WD 51000.

Missouri Court of Appeals,
Western District.

Feb. 13, 1996.

Ellen H. Flottman, Office of the State Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Christine M. Blegen, Assistant Attorney General, Jefferson City, for respondent.

Before BRECKENRIDGE, P.J., and ULRICH and LAURA DENVIR STITH, JJ.

LAURA DENVIR STITH, Judge.

Defendant-Appellant Michael A. Gordon appeals his conviction for murder in the second degree, § 558.011.1(1), RSMo 1994, and armed criminal action, § 571.015, RSMo 1994, in the shooting death of Michael T.

Green.  Mr. Gordon was sentenced to a term of life imprisonment for murder in the second degree and to a consecutive 20–year term for armed criminal action.  On direct appeal of his convictions, Mr. Gordon contends there was insufficient evidence to support his guilt.  Mr. Gordon also appeals the denial of his Rule 29.15 motion on the ground that he was denied effective assistance of counsel because:  (1) trial counsel failed to object when, in closing argument, the prosecutor referred to a statement allegedly made by Mr. Gordon which had not been entered in evidence;  and (2) defense counsel himself referred to this alleged statement by Mr. Gordon in his portion of closing argument.

This Court finds that there was sufficient evidence to support Mr. Gordon's conviction and that the motion court did not err in denying Mr. Gordon's Rule 29.15 motion.  Judgment affirmed.

## I. *FACTUAL AND PROCEDURAL BACKGROUND*

In determining whether a submissible case was made, we review the evidence and reasonable inferences therefrom in the light most favorable to the State and disregard all contrary evidence and inferences.  *State v. Silvey,* 894 S.W.2d 662, 673 (Mo. banc 1995).

During the day of October 2, 1992, the victim, Michael T. Green, waved a gun at Eugene Settles, Stacey Briscoe, Gary Hopkins and the defendant Michael A. Gordon in the area of 25th Street and Brooklyn Avenue.  Later that night, about fifteen t o twenty people began fighting at about that same location.  About an hour later, a series of gunshots were fired.

Veronica Morgan came out onto the second floor steps of her apartment when she heard the shots.  She saw Mr. Hopkins and Mr. Gordon standing in the street, across from Mr. Green's dead body, holding shotguns.  She heard Mr. Hopkins threaten people standing in the street nearby, stating, "They started it, we finished it, and if anyone will say anything about it, we'll finish that too."  Mr. Hopkins pumped his shotgun after making the threat.  Mr. Gordon, standing beside Mr. Hopkins, said nothing.  He and Mr. Hopkins then walked off together down a nearby alleyway.

Ms. Morgan crossed the street to inspect the body, and then began to walk back to her apartment.  As she did so, the defendant's friend Mr. Briscoe bent over the body, went through the victim's clothes, and ran from the body carrying a gun.

Soon thereafter, at about the point when the police arrived, Mr. Hopkins and Mr. Gordon returned to the location where the shooting had occurred.  At this point they no longer had their weapons.  Ms. Morgan asked Mr. Gordon "Why they had to do that?"  Mr. Gordon responded, "He got what he deserved."  The police then began to ask those in the area whether there had been any witnesses to the crime.  Ms. Morgan did not say anything because she "was afraid."  According to Ms. Morgan, Mr. Gordon kept looking at her while the police were there.

The police explored the area and found shotgun shells in an alleyway near the scene of the crime and from which the evidence indicated the fatal rounds had probably been fired.  The police also found other shotgun shells as well as casings from other weapons in the area of the murder.  In addition, the victim's 1978 blue Camaro, located nearby, had a pattern of holes in it made by a shotgun and the left front headlight had been shot out.  The trunk of the Camaro was open.  Several items were lying behind the car including an auto body plastic bag.  The bag was examined and Mr. Hopkins' fingerprints were found on it.  The keys to the Camaro were later found by the police in the alleyway.

The following day, October 3, 1992, Ms. Morgan again saw Mr. Gordon.  She asked him if he had killed the victim.  Mr. Gordon responded that "If he did, he did.  If he didn't, he didn't."

Almost three weeks later, on October 23, 1992, the police attempted to arrest Mr. Gordon.  He fled from them but was eventually captured and placed in custody.

At trial the State presented evidence that the victim was surrounded and ambushed by multiple shooters when he returned to the area of 25th Street and Brooklyn in the early

morning of October 3, 1995. The fatal shots had been fired by a shotgun. Another bullet from an unknown gun had also struck Mr. Green in the head.

Mr. Gordon was tried under the theory of accomplice liability. Mr. Gordon did not testify on his own behalf, but he did call two witnesses, Earl Clark and Tina Betts, to refute his role in the shootings. The two claimed that the victim and three or four other men pulled up in a 1978 blue Camaro, armed with a hand gun and shotguns. Ms. Betts claimed that she convinced the men that they did not want any trouble and the men left. The witnesses testified that as they and Mr. Gordon were leaving peacefully through the alleyway where the four spent shotgun shells were later found, they heard gunfire. They denied any involvement in the killing.

The jury convicted Mr. Gordon of second degree murder and armed criminal action. He was sentenced to a term of life imprisonment for murder in the second degree and to a consecutive 20–year term for armed criminal action. Mr. Gordon filed a Rule 29.15 motion in which he contended that his trial counsel was ineffective for failing to object to certain comments made by the prosecutor during closing argument and for using the same objectionable comments in the defendant's own closing argument. The motion judge issued findings of fact and conclusions of law denying Mr. Gordon's Rule 29.15 motion. This consolidated appeal followed.

## II. *THE EVIDENCE WAS SUFFICIENT TO SUPPORT MR. GORDON'S CONVICTION*

### A. *Standard of Review.*

■ Mr. Gordon contends on direct appeal that there was insufficient evidence to support his convictions. Review of a challenge to the sufficiency of the evidence to support a criminal conviction is limited to a determination whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt. *State v. Grim,* 854 S.W.2d 403, 405 (Mo. banc 1993), *cert. denied,* — U.S. —, 114 S.Ct. 562, 126 L.Ed.2d 462 (1993). Sub-

stantial evidence is that "from which the trier of fact could reasonably find the issue in harmony with the verdict." *State v. Gomez,* 863 S.W.2d 652, 655 (Mo.App.1993).

### B. *The Evidence Sufficiently Supports the Conviction.*

Mr. Gordon argues that the evidence at most shows that he was present at the scene with a weapon. Because many others were also present with weapons, Mr. Gordon argues, the evidence does not support a finding that he shot the victim or even fired his weapon.

■ It is true, as Defendant argues, that mere presence and the opportunity to commit a crime alone are not enough to support a conviction. *State v. Allen,* 420 S.W.2d 330, 333 (Mo.1967). There is sufficient evidence to support a conviction if the State shows presence, opportunity, and additional circumstances consistent with the commission of the crime, however. *Id.*

■ Moreover where, as here, the defendant is tried under the theory of accomplice liability, then proof that defendant himself fired the fatal shots is not essential to support his conviction. *State v. McGowan,* 789 S.W.2d 242, 243 (Mo.App.1990). To the contrary, in order to sustain Mr. Gordon's conviction for accomplice liability, the State simply needed to prove that Mr. Gordon made some "affirmative advancement of the enterprise," not that he committed every element of the crime. *State v. Gonzalez–Gongora,* 673 S.W.2d 811, 813 (Mo.App.1984). This is because where "the group activity is the use of weapons to wound or kill supposed adversaries, one who joins the group and himself carries a weapon aids and encourages the gang enterprise and affirmatively advances the objective." *McGowan,* 789 S.W.2d at 243. In such a situation, proof of defendant's companionship and conduct before, during, and after the crime with others involved with the crime, in combination with presence at the scene and opportunity, can support the conviction.

■ While Mr. Gordon called witnesses refuting some of the circumstances indicating his guilt and applied a different meaning to the statements he and Mr. Hopkins made,

the jury was not required to believe this evidence. Rather, the jurors may believe all, some, or none of a witness' testimony in arriving at their verdict and any conflicts or inconsistencies in the testimony must be resolved by the jury. *State v. Dulany,* 781 S.W.2d 52, 55 (Mo. banc 1989).

█ In any event, Mr. Gordon's own witnesses place him, at the very moment of the killing, in the alleyway in which several spent shotgun shells were found after the shooting. Moreover, shortly after the shooting, Mr. Gordon stood next to Mr. Hopkins as he proclaimed, "They started it, we finished it, and if anyone will say anything about it, we'll finish that too." A short time later, Mr. Gordon claimed the victim, "[g]ot what he deserved." The following day, Mr. Gordon commented, when asked whether he had killed the victim, that "If he did, he did. If he didn't, he didn't" shoot the victim.

This and the other evidence offered by the State supports the State's theory of an ambush by Mr. Gordon and a group of his friends. The fact that the evidence shows others at the scene had guns advances, rather than refutes, the prosecution's theory of Mr. Gordon's guilt as an accomplice. In addition, the prosecution presented evidence that, when the police approached Mr. Gordon to arrest him, he fled. Flight in order to avoid arrest indicates consciousness of guilt and in itself presents sufficient additional circumstances from which the jury could infer Mr. Gordon's participation in the crime. *See, e.g., State v. Hayes,* 713 S.W.2d 275, 277 (Mo.App.1986) ("[w]hether from the scene or elsewhere, unexplained flight is relevant and admissible as indicating consciousness of guilt if the purpose of the flight is to avoid arrest or prosecution"). By finding Mr. Gordon guilty of the crimes charged, the jury chose to believe the State's theory of Mr. Gordon's involvement in the crime.

For the reasons just stated we find that sufficient evidence was presented to support the verdict.

## III. THE MOTION COURT DID NOT ERR IN DENYING APPELLANT'S RULE 29.15 MOTION

Mr. Gordon also appeals the motion court's denial of his Rule 29.15 motion.

In support of his motion, Mr. Gordon presented evidence that the prosecutor informed the jury in his opening statement that Ms. Morgan would testify that, when she asked Mr. Gordon what had happened, he responded "They were busting caps, we busted back." Ms. Morgan did testify at trial, but she did not repeat this alleged statement by Mr. Gordon during her testimony. The prosecutor, apparently unaware of this fact, asked the jury to consider this alleged statement by Mr. Gordon in reaching its verdict. Defense counsel, also apparently unaware that Ms. Morgan had not repeated this statement while actually on the witness stand, did not object. Rather, in his portion of the closing argument he cast doubt on the credibility of Ms. Morgan in attributing this statement to Mr. Gordon.

The sole issues raised on appeal of denial of Mr. Gordon's Rule 29.15 motion are whether defense counsel's failure to object to the prosecutor's closing argument reference to this unadmitted statement, and defense counsel's later reference to the statement in his own closing argument, constituted ineffective assistance of counsel and required the motion court to grant him a new trial.

### A. Standard of Review.

█ Appellate review of the motion court's denial of a Rule 29.15 motion is limited to a determination of whether the findings and conclusions of the motion court are clearly erroneous. Rule 29.15(j). Such findings and conclusions are deemed clearly erroneous only if, after reviewing the entire record, this Court is left with the definite and firm impression that a mistake has been made. *Sanders v. State,* 738 S.W.2d 856, 857 (Mo. banc 1987), *cert. denied,* 493 U.S. 898, 110 S.Ct. 252, 107 L.Ed.2d 201 (1989) (citations omitted).

█ To prove a claim of ineffective assistance of counsel, Mr. Gordon was required to show that his attorney failed to exercise the customary skill and diligence that a reasonably competent attorney would have exhibited under similar circumstances. *Sand-*

*ers,* 738 S.W.2d at 857. "The movant has the burden of proving his grounds for relief by a preponderance of the evidence." Rule 29.15(h). The failure to raise a meritorious objection, by itself, does not amount to ineffective assistance of counsel. *State v. Shurn,* 866 S.W.2d 447, 471 (Mo. banc 1993), *cert. denied,* —— U.S. ——, 115 S.Ct. 118, 130 L.Ed.2d 64 (1994); *Antwine v. State,* 791 S.W.2d 403, 410 (Mo. banc.1990), *cert. denied,* 498 U.S. 1055, 111 S.Ct. 769, 112 L.Ed.2d 789 (1991). There is a strong presumption that trial counsel's conduct falls within the wide range of reasonable professional assistance and trial strategy. *Bevly v. State,* 778 S.W.2d 297, 298 (Mo.App.1989).

■ Even if his counsel's conduct is found to be deficient, Mr. Gordon must also affirmatively prove that he was prejudiced by showing that there is a reasonable probability that, but for his counsel's error, the jury would have had a reasonable doubt concerning Mr. Gordon's guilt. *Sanders,* 738 S.W.2d at 857. The court must consider the totality of the evidence in determining whether a reasonable probability exists. *Bevly,* 778 S.W.2d at 299. As the court explained in *Bevly:*

> The fact that an error by counsel might have had some conceivable effect on the outcome is not sufficient. Rather, movant, when challenging a conviction, must show there is a reasonable probability that, absent the alleged error, the fact finder would have had a reasonable doubt respecting guilt.

*Id.*

■ It also well-settled that "[t]here is no reason for a court ... to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland v. Washington,* 466 U.S. 668, 697, 104 S.Ct. 2052, 2069, 80 L.Ed.2d 674 (1984). "If it is simpler to dispose of a claim of ineffectiveness on the ground of lack of sufficient prejudice, that course should be followed." *Sidebottom v. State,* 781 S.W.2d 791, 796 (Mo. banc.1989), *cert. denied,* 497 U.S. 1032, 110 S.Ct. 3295, 111 L.Ed.2d 804 (1990).

Because we find that here, as in *Bevly,* the statements were not so prejudicial as to create a reasonable probability that the outcome would have been different if counsel had properly objected, we reverse without reaching the issue whether, by failing to object, counsel provided ineffective assistance.

**B.** *Mr. Gordon Was Not Denied Effective Assistance of Counsel by Trial Counsel's Failure to Object to and Use of a Statement not in Evidence.*

■ Mr. Gordon argues that his counsel's failure to object to the prosecutor's closing argument, and his counsel's own reference in closing argument to Mr. Gordon's alleged statement, constituted ineffective assistance of counsel. Mr. Gordon contends that this was so serious as to have affected the outcome of the trial because the alleged statement "They busted caps. We busted back" is the only evidence that Mr. Gordon actually fired the fatal shots.

We disagree. Mr. Gordon's alleged statement "we busted back" did not necessarily constitute an admission that he personally fired shots. Rather, it constituted an admission that he and his friends—"we"—had shot at the victim. It thus supported the prosecution's claim that Mr. Gordon was guilty as an accomplice, and not because Mr. Gordon himself fired the fatal shots. There was ample additional evidence of Mr. Gordon's role as an accomplice, including his other statements to Ms. Morgan, his conduct at and following the incident, and Mr. Hopkins' statements after the incident.

For these reasons, we find that the evidence to which the prosecutor improperly referred was merely cumulative of the other evidence of accomplice liability detailed above. As such, we cannot say that the motion court erred in finding that the outcome of the trial would not have been different had defense counsel objected to the prosecutor's improper reference to this unadmitted statement.

We similarly do not believe that defense counsel's reference to the unadmitted statement during its own closing argument affected the outcome of the trial. At that point, the prosecutor had already discussed the statement in his own closing argument, without objection. Had defense counsel said

nothing about the statement, it may well have led the jury to believe defendant did not contest that the statement had been made. Even if counsel had known that the statement was not admitted, it therefore would have been reasonable trial strategy to mitigate the effects of the statement once it had become part of the trial. Counsel tried two methods to mitigate the importance of the statement. First, counsel challenged Ms. Morgan's credibility by raising issues about her motive for testifying, the strength of her recollection, and whether she had been drinking on the evening of the shooting. Secondly, he questioned the inclusivity of the word "we" in the phrase "we busted back". Both strategies were reasonable in the circumstances. Even though they proved unsuccessful, they therefore do not provide a basis for post-conviction relief. *State v. Williamson,* 877 S.W.2d 258, 262 (Mo.App.1994); *State v. Anthony,* 881 S.W.2d 658, 661 (Mo. App.1994).

For these reasons, we find that no basis for grant of a new trial exists. We affirm the conviction and denial of the Rule 29.15 motion.

All concur.