**STATE of Missouri, Respondent,**

v.

**Sam G. NEAL, Appellant.**

**No. WD 56146.**

Missouri Court of Appeals,
Western District.

Feb. 15, 2000.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 28, 2000.

Application for Transfer Denied
April 25, 2000.

---

Andrew A. Schroeder, Asst. Public Defender, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Krista D. Boston, Asst. Atty. Gen., Jefferson City, for respondent.

Before BRECKENRIDGE, C.J., LOWENSTEIN and ELLIS, JJ.

BRECKENRIDGE, Chief Judge.

Sam Neal appeals from his conviction of the class C felony of assault in the second degree, § 565.060,RSMo 1994.[1] Mr. Neal was tried by a jury and the court sentenced him, as a prior and persistent offender, to eight years imprisonment. On appeal, Mr. Neal argues that (1) the State failed to present sufficient evidence that he acted together with other persons with a common purpose to commit second degree assault; and (2) the trial court plainly erred in submitting the verdict director for accomplice liability for second degree assault because the instruction failed to require the State to prove that Mr. Neal acted with the required mental state, in violation of §§ 562.016 and 562.036. Because this court finds that the State failed to prove that Mr. Neal acted in concert to commit the class C felony of assault in the second degree, Mr. Neal's conviction for that offense is reversed and the case is remanded for retrial of Mr. Neal on the lesser included offense of assault in the third degree, a class A misdemeanor.

### Facts and Procedural History

On appeal from a criminal conviction, this court reviews the facts in the light most favorable to the jury's verdict. *State v. Storey*, 901 S.W.2d 886, 891 (Mo. banc 1995). In the early evening of December 29, 1997, Mr. Neal, and his friend, Patrick Baker, were drinking beer and other alcoholic beverages at Mr. Baker's home. Mr. Baker's girlfriend, Stacy Foster, and his three children were also at the residence. After drinking at the Baker residence for a period of time, Mr. Neal, Mr. Baker, Ms. Foster and the Baker children went to the North Kansas City Pro Bowl.

When they arrived, the group proceeded to the pool room. Mr. Neal and Mr. Baker played pool in the pool room. Ms. Foster was also in the pool room, but she left occasionally to watch the older two children in the adjoining arcade area. The pool room had approximately nine pool tables and several were in use. Mr. Neal and Mr. Baker continued drinking while they played pool.

---

1. All statutory citations refer to the Revised Statutes of Missouri 1994.

Highly intoxicated, Mr. Neal approached one of the other groups and used racial epithets to antagonize them. At first, the group tried to ignore him, but then asked Mr. Baker to restrain Mr. Neal. Mr. Neal confronted one member of the group, Jose Ruiz. The two exchanged words. Mr. Neal pushed Mr. Ruiz, and Mr. Ruiz pushed back. They eventually wrestled to the ground. While Mr. Ruiz and Mr. Neal were fighting, Mr. Ruiz gained the upper hand by pinning Mr. Neal to the ground. At this time, Ms. Foster picked up a pool cue and hit Mr. Ruiz over the head. This blow left an open gash on Mr. Ruiz's head, which later required stitches. Mr. Ruiz also suffered bruising around his left eye from the fight with Mr. Neal.

During the fight between Mr. Neal and Mr. Ruiz, Mr. Ruiz's companions and Mr. Baker also began to fight. One member of Mr. Ruiz's group left the pool room and called the police. Around this time, Mr. Neal briefly ran away from the fight, but then returned.

When the police arrived and entered the bowling alley, Mr. Neal began to run from the police. One officer caught up with Mr. Neal. Mr. Neal struggled and resisted as the officer tried to arrest him. Eventually, Mr. Neal was subdued with the assistance of several officers, and arrested. The State charged Mr. Neal with the class C felony of assault in the second degree. The State alleged that Mr. Neal, as an accomplice to Ms. Foster, knowingly caused physical injury to Mr. Ruiz by means of a dangerous instrument – a pool cue. The case was tried to a jury. The jury convicted Mr. Neal and the court sentenced him, as a prior and persistent offender, to eight years in prison. This appeal followed.

## No Evidence That Mr. Neal Had a "Common Plan" with Ms. Foster to Commit an Assault in the Second Degree

■ In his first point on direct appeal, Mr. Neal contends that there was insuffi-cient evidence to support his conviction for the class C felony of assault in the second degree. He argues that there was insuffi-cient evidence that he aided or encouraged Ms. Foster to knowingly cause physical injury to Mr. Ruiz by means of a danger-ous instrument as required by § 565.060.1(2), the charge submitted to the jury.

This court's review of a claim of insuffi-ciency of the evidence in a criminal case is limited to a determination of whether there is "sufficient evidence from which a reasonable juror might have found the de-fendant guilty beyond a reasonable doubt." *State v. Gordon,* 915 S.W.2d 393, 396 (Mo. App.1996). Sufficient evidence is evidence "from which the trier of fact could reason-ably find the issue in harmony with the verdict." *Id.* (quoting *State v. Gomez,* 863 S.W.2d 652, 655 (Mo.App.1993)). This court views the evidence, as well as its reasonable inferences, in a light most fa-vorable to the verdict. *State v. Stacy,* 913 S.W.2d 384, 386 (Mo.App.1996).

In arguing that the evidence was insuffi-cient, Mr. Neal specifically claims that the State failed to present any evidence that he acted in concert with Ms. Foster with a common purpose, or that he aided or en-couraged her to commit an assault on Mr. Ruiz. Whether an individual is responsible as an accomplice is governed by two stat-utes, §§ 562.036 and 562.041. See *State v. Logan,* 645 S.W.2d 60, 63–64 (Mo.App. 1982). Section 562.036 provides:

A person with the required culpable mental state is guilty of an offense if it is committed by his own conduct or by the conduct of another person for which he is criminally responsible, or both.

Under § 562.041,

1. A person is criminally responsible for the conduct of another when:

\* \* \*

(2) Either before or during the commis-sion of an offense with the purpose of

promoting the commission of an offense, he aids or agrees to aid or attempts to aid such other person in planning, committing or attempting to commit the offense.

 These statutes require the State to prove that a defendant (1) purposefully promoted an offense, and (2) had the culpable mental state for the crime for which he is to be held liable. *Logan,* 645 S.W.2d at 64. If the defendant had the purpose to promote the crime with which he is charged as an accomplice, he is criminally responsible for the principal's conduct. *Id.* While the conduct of the person actually committing the offense may be imputed to the defendant, the mental state cannot be similarly imputed. *Id.* Direct evidence of a defendant's mental state is rarely obtainable, however, but it may be inferred from the defendant's conduct. *State v. Howard,* 896 S.W.2d 471, 495 (Mo.App.1995). If it can be shown that the defendant had the "purpose to promote an offense, he may be found to have the required culpable state of mind" as an aider and abettor. *State v. Clay,* 748 S.W.2d 44, 46 (Mo.App.1988). The question in this case is whether the State presented sufficient evidence to prove, directly or by inference from his conduct, that Mr. Neal had the necessary culpable mental state to be criminally responsible for Ms. Foster's assault of Mr. Ruiz with a dangerous weapon.

In considering whether the State presented sufficient evidence, here, we look to *State v. Stemmons,* 262 S.W. 706 (Mo. 1924), which has a similar fact situation.[2] In *Stemmons,* Mr. Stemmons was convicted of manslaughter under a theory of accomplice liability. *Id.* Mr. Stemmons was an attorney representing a client in a parole hearing. *Id.* After Mr. Stemmons argued on behalf of his client and the court denied the application for parole, opposing counsel commented, "Sometimes young lawyers in their zeal misstate facts and ought to be called down." *Id.* In response, Mr. Stemmons grabbed opposing counsel by the throat and the two wrestled to the floor. *Id.* Seeing this, Mr. Stemmons' client joined the fight by kicking opposing counsel twice in the head, causing a contusion that resulted in his death. *Id.*

The court found that the evidence showed that the client acted independently of Mr. Stemmons in committing the attack. *Id.* There was no evidence that Mr. Stemmons "intended to kill the deceased or that he did any act from which such intent could be, by any stretch of the imagination, inferred." *Id.* The *Stemmons* court stated:

> To render one an aider or abettor and, as a consequence, guilty in like degree with the principal in the commission of a crime, there should be evidence of his knowledge of the intention or purpose of the principal to commit the assault. In other words, there must have been a common purpose, by which is meant a like criminal intent in the minds of Mills and the appellant, to render the latter, guilty as charged, and hence, authorize the giving of the instructions.

262 S.W. at 707.

In both *Stemmons* and the present case, the appellant was the initial instigator of the fight, but was charged as an accessory to a third person who entered the fight, apparently on behalf of the appellant. See id. at 706. In both cases, the appellant and the third person were present together at the scene of the crime and were associated with each other before and during the commission of the crime. *Id.* However, in both cases there is a lack of evidence indicating that the appellant and the third person had any common purpose to commit any crime. In *Stemmons,* the appellant and the third person were in court as attorney and client. *Id.* Here, Mr. Neal

**2.** While *Stemmons* was decided under the common law, the law as discussed in *Stemmons* is still good law. The aider and abettor statute, § 562.041, "codifies that which was previously established under common law." *State v. White,* 622 S.W.2d 939, 945 (Mo. banc 1981).

was on a social outing with his friends. In neither case was there evidence of any "like criminal intent" in the minds of the appellant and the third person to commit an assault. See id.

Applying the *Stemmons* reasoning, since the State presented no evidence of a prior plan to commit some crime, for Mr. Neal to be guilty as accomplice, the State had to establish that Mr. Neal "did some overt act 'with a view'—that is, for the purpose—to produce the result he is charged with aiding and abetting." *Stemmons*, 262 S.W. at 707. In other words, the State bore the burden of proving that Mr. Neal committed some act that aided or encouraged Ms. Foster to join in the fight. *Id.* The Eastern District defined "aiding and abetting" as the following:

> 'Aiding and abetting,' in the sense those words are used in criminal law, contemplate conduct calculated to incite, encourage or assist in the perpetration of a crime, and comprehend all assistance rendered by acts or words of encouragement, incitement or support in a criminal act, and involve some participation, either before or at the time, the criminal act is committed.

*State v. Clark*, 596 S.W.2d 747, 751 (Mo. App.1980).

The State's evidence showed that Mr. Neal initially acted alone. Mr. Neal started the fight with Mr. Ruiz and his group when he alone insulted and approached them. An altercation then ensued between Mr. Ruiz and Mr. Neal. The altercation escalated and others became involved. It was only when Mr. Neal was on the ground fighting with Mr. Ruiz that Ms. Foster intervened and hit Mr. Ruiz with the pool cue. No evidence was presented indicating that Mr. Neal, by word or action, encouraged or promoted Ms. Foster's involvement in the fight. Evidence that Mr. Neal simply started the fight is not sufficient to convict Mr. Neal of aiding or encouraging Ms. Foster to join. *Id.* The State presented no evidence of any other acts of aiding or encouraging.

The State asserts that because it presented evidence that Mr. Neal instigated the altercation, was present when Mr. Baker and Ms. Foster made a "show of force," fled the crime scene, and was associated with the alleged co-conspirators before, during and after the assault, there was sufficient evidence from which the jury could have found beyond a reasonable doubt that Mr. Neal was an accomplice. It is the *defendant's* participation in a "show of force" which is an indicia of aiding and abetting, and not the principal's, as the State suggests. See *State v. Roper*, 819 S.W.2d 384, 385 (Mo.App.1991). However, the State is correct that "presence at the scene of the crime, flight therefrom and association with others involved before, during and after commission of the crime" are indicia of aiding and abetting. *State v. McGowan*, 789 S.W.2d 242, 243 (Mo.App. 1990). See also *State v. Fuller*, 880 S.W.2d 589, 593 (Mo.App.1994). A reading of these cases demonstrates that the courts, in finding that the evidence was sufficient to the convictions, relied upon significant evidence beyond these indicia of aiding and abetting. In *McGowan*, there was evidence that the defendant made a plan with others in his gang to seek out a member of a rival gang to settle their differences, and that he armed himself to accompany them to find the rival gang member before the shootings occurred. 789 S.W.2d at 242. In *Fuller*, the defendant disconnected the victim's telephone and then stood in a doorway, blocking the victim's view of the shooter, right before the shots were fired. 880 S.W.2d at 593.

To buttress its argument that it had sufficient proof, the State relies on *State v. Forister*, 823 S.W.2d 504 (Mo.App.1992), and *State v. Kobel*, 927 S.W.2d 455 (Mo. App.1996). *Forister* and *Kobel* hold that the circumstances surrounding the crime can give rise to an inference that the defendant was an accomplice. Although some of the facts in those cases are similar to the facts of this case, there are, again, important facts that render the cases dis-

tinguishable. In *Forister*, 823 S.W.2d at 507, the defendant and two others planned to commit a burglary together and defendant drove the others to and from the house where the crime was committed. However, the crime escalated beyond the defendant's expectation to an armed robbery. *Id.* The court found that the joint undertaking of criminal activity with others was sufficient to make the defendant responsible for the crimes he could reasonably anticipate. *Id.* at 508. In *Kobel*, 927 S.W.2d at 459, there was evidence which supported an inference that the defendant went with a group of men to a gay bar with the common purpose of harassing and assaulting people associated with the establishment. When the men arrived in front of the bar, they yelled derogatory epithets at the people outside the bar. *Id.* They then got out of their vehicles at the same time, and crossed the street together. *Id.* The defendant and the other males surrounded the victim, and the defendant sprayed the victim in the face with Mace seconds before one of the other men struck the victim twice in the head with a metal bar. *Id.* The court upheld the conviction after finding the indicia sufficient to show that the defendant was an accomplice to the criminal action. *Id.*

The situation in this case is not the same as in *Forister* and *Kobel.* Here, the State offered no evidence that Mr. Neal, Mr. Baker and Ms. Foster intended to commit any crime together prior to the criminal act charged. The evidence indicates that the intent shared by Mr. Neal, Mr. Baker and Ms. Foster when they went to the Pro Bowl was to socialize. The evidence further shows that Mr. Neal acted independently in instigating the fight and that Ms. Foster joined the fracas of her own volition. All of the State's witnesses testified that Mr. Neal did not encourage her participation, nor is there evidence that he intended for Ms. Foster to join him in the fight. Because there was no common intent to commit any crime in this case or any actions from which such an intent can be inferred, the reasoning of *Forister* and *Kobel* is inapplicable.

Viewed in the light most favorable to the jury's verdict, the evidence in this case fails to establish every element required to prove Mr. Neal's guilt as an accomplice. The State presented no evidence from which a reasonable juror could have found that Mr. Neal had the intent to act with Ms. Foster with the common purpose of committing second degree assault or that he aided or encouraged Ms. Foster to assault Mr. Ruiz with a pool cue. Mr. Neal's conviction for the class C felony of assault in the second degree is reversed.

### Remand for New Trial

Because the State failed to present sufficient evidence to support Mr. Neal's conviction of assault in the second degree and that conviction is reversed, principles of double jeopardy prohibit Mr. Neal from being retried on that charge. *State v. O'Brien*, 857 S.W.2d 212, 221 (Mo. banc 1993). However, when there is sufficient evidence at trial to submit the case to the jury on a lesser-included offense of that charged in the indictment or information, double jeopardy is not offended by retrial of the lesser offense. *O'Brien*, 857 S.W.2d at 221. See also *State v. Reyes*, 862 S.W.2d 377, 388 (Mo.App.1993). Here, there was sufficient evidence to support a finding of Mr. Neal's guilt on the lesser offense of the class A misdemeanor of assault in the third degree. Therefore, the case is remanded for retrial on the offense of assault in the third degree.

Because this court's ruling with regard to Mr. Neal's first point on appeal renders his claim of instructional error moot, it will not be addressed.

The judgment of conviction is reversed and the cause is remanded.

All concur.