**M.A.A., Appellant,**

v.

**JUVENILE OFFICER, Respondent.**

No. WD 69051.

Missouri Court of Appeals, Western District.

Dec. 9, 2008.

James E. Kelley, Kansas City, MO, for Appellant.

James E. Herbertson, Kansas City, MO, for Respondent.

Before: JOSEPH M. ELLIS, Presiding Judge, RONALD C. HOLLIGER, Judge and JOSEPH P. DANDURAND, Judge.

JOSEPH M. ELLIS, Judge.

M.A.A. ("Appellant") appeals from a judgment in the Circuit Court of Jackson County finding him in need of care and treatment due to conduct in violation of § 569.030 [1] (robbery in the second degree) and asserting jurisdiction over him under § 211.031. On July 7, 2007, the Juvenile Officer filed a petition alleging that Appellant was in need of care and treatment because he had, by his conduct and by the conduct of another for which he would be criminally responsible if tried as an adult, forcibly stolen an MP3 player from I.M.R. ("Ivan") [2] in violation of § 569.030. Appellant was eleven years old and Ivan was fourteen years old at the time. The petition was tried on September 11, 2007, along with a petition against one of three other boys involved in the allegations, A.E.R. ("Aaron"), who was fifteen years old. Ivan and two police officers testified on behalf of the Juvenile Officer, and Aaron testified on his own behalf.

On the evening of July 6, 2007, Ivan was skateboarding in the parking lot of his apartment complex and he sat down to rest and listen to his MP3 player. A group of four boys whom he didn't know rode their bicycles toward where he was seated. Ivan had seen the pool attendant tell the four boys to leave the premises earlier in the afternoon. He identified Appellant and Aaron, the other juvenile on

---

1. All statutory citations are to RSMo 2000 unless otherwise noted.

2. All juveniles involved in this case are identified by their initials, consistent with § 211.321, RSMo 2000. For convenience, however, fictitious first names have been assigned to each juvenile, other than Appellant, and each is designated by that fictitious name throughout.

trial with Appellant, as two of the four boys. One of the boys asked Ivan if he was listening to an MP3 player and what kind of music he was listening to, and he said that it was an MP3 player and he was listening to "heavy metal." One of the boys then "took" or "snatched" the MP3 player out of Ivan's hand and began to ride away on his bike. Ivan chased him on his skateboard and on foot, and the chase went over the street and through some backyards. Ivan testified that the other three boys "weren't following [him]" but "stayed right there." After he had chased the boy with the MP3 player "pretty far," Ivan caught up with him when the boy stopped in the street. The other three boys then "caught up and stopped there too." Ivan couldn't remember whether Appellant or Aaron was the boy who took his MP3 player, and he couldn't remember what the person who took his MP3 player looked like.

Ivan testified that, once he caught up with the boy, he repeatedly asked the boy with his MP3 player to give it back, but the boy refused and said Ivan would have to box him to get it back. Ivan stated that he told the boy he didn't want to fight and that he was holding his skateboard above his head for protection but never swung the skateboard. Ivan testified that the boy with the MP3 player started to run away, and Ivan tried to chase him again but fell off his skateboard. He stated that one of the other three boys then picked up his skateboard and threw it. He couldn't remember whether Appellant or Aaron was the boy who threw his skateboard, but he knew it wasn't the boy who had the MP3 player. Ivan testified that while he was trying to get his skateboard back, one or more of the four boys began hitting him repeatedly in the back, legs, and back of the head. He didn't know how many of the boys were hitting him or what they were hitting him with, but he thought it

was their fists. All four boys then rode away on their bikes, and Ivan went home without his MP3 player.

Ivan told his mother what had happened, and she called the police. Shortly thereafter, Officer Ballowe stopped the four boys as they were riding their bikes together about a half block from Ivan's apartment complex. He detained them and waited for another officer to arrive to fill him in on the situation. While they were waiting, one of the four boys, G.M. ("Gage"), asked, "Is this about the MP3 player?" and Officer Ballowe responded, "What MP3 player?" Gage stated, "If this is all over the MP3 player, you can have it back," and he told Officer Ballowe that the MP3 player was in his backpack. Officer Kunce then arrived and retrieved the MP3 player from Gage's backpack so that Officer Ballowe could continue watching the boys. Ivan identified the four boys at the scene, but he did not specify to the police which boy had taken his MP3 player. He couldn't say whether Gage was the boy who took his MP3 player when asked to identify him in court. Ivan got his MP3 player back when the police gave it to him.

Appellant did not testify on his own behalf, but Aaron testified as to the events and was cross-examined by Appellant's counsel. He stated that he and the other three boys, including Appellant, had been hanging out for about two hours when they came upon Ivan sitting on the curb and went up to him because they hadn't seen him around before. Aaron testified that he and the other boys had not discussed stealing anything from anyone at any point during the day and that none of the four boys said anything about taking the MP3 player when they were talking to Ivan. He stated that Gage took the MP3 player from Ivan, Ivan began to chase him on his skateboard, and the other three boys caught up with Gage after Ivan did. Aar-

on stated that he rode his bike to the grass then jogged at a medium pace to catch up with them. He testified that Ivan looked angry and swung his skateboard at Gage and that Gage dodged the skateboard, hit Ivan, and then started running away on his bike. He stated that he turned around to get his bike when Ivan got on his skateboard to start chasing Gage and the next thing he saw was that Ivan had fallen off the skateboard. Aaron testified that the third boy was close to Ivan and Appellant was a little ways from Ivan at that point. On cross-examination, Aaron testified that Appellant did not "participate in any way in the taking of the MP3 player" and did not "in any way encourage [Gage] to keep the MP3 player." He stated that Appellant was "just sitting like on top of his bike" and that he didn't say anything to Ivan. He further stated that he didn't see Appellant hit or approach Ivan in any way and that he only saw Gage hit Ivan, but he admitted that he was not watching Ivan continuously so it was possible that someone else may have hit him.

Appellant moved for dismissal or acquittal at the close of the Juvenile Officer's evidence, and again at the close of all evidence, on the grounds that there was insufficient evidence that Appellant had meaningfully participated in a robbery. The court denied the motions and found that the allegations in the petition had been proven beyond a reasonable doubt. The court committed Appellant to the custody of the Director of Family Court Services but suspended execution, placing him in his mother's custody with supervised probation. Appellant filed a motion to amend the judgment and for rehearing, which was denied. This appeal follows.

"Review of juvenile proceedings is analogous to review of other court-tried cases. The trial court's order is sustained unless no substantial evidence supports it, it is against the weight of the evidence, or it erroneously declares or applies the law." *In the Interest of G.F.M.*, 169 S.W.3d 109, 111 (Mo.App. W.D.2005). "The reviewing court defers to the trial court on issues of fact and the credibility of witnesses." *Id.* "[I]n determining the sufficiency of evidence, we view the evidence and reasonable inferences which may be drawn therefrom in the light most favorable to the verdict and we ignore all evidence and inferences to the contrary." *C.L.B. v. Juvenile Officer*, 22 S.W.3d 233, 236 (Mo.App. W.D.2000). The elements of the alleged crime must be proven beyond a reasonable doubt " 'during the adjudicatory stage when a juvenile is charged with an act which would constitute a crime if committed by an adult.' " *Id.* at 239 (quoting *In Re Winship*, 397 U.S. 358, 359, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970)).

In his two Points on Appeal, Appellant essentially asserts only that there was insufficient evidence to support the conviction. He first contends that the evidence was insufficient to show beyond a reasonable doubt that a robbery was committed because there was no evidence that the MP3 player was forcibly stolen. Secondly, he claims that the evidence did not support a finding that he either actually took the MP3 player or "affirmatively participated" in the crime to make him liable as an accomplice.

"A person commits second degree robbery when he 'forcibly steals property.' " *Patterson v. State*, 110 S.W.3d 896, 901 (Mo.App. W.D.2003) (quoting § 569.030.1). "A person 'forcibly steals,' thereby committing second degree robbery, if, 'in the course of stealing' the person 'uses or threatens the immediate use of physical force upon another person for the purpose of ... [p]reventing or overcoming resistance to the taking of the property or ... [c]ompelling the owner of such property or

another person to deliver up the property[.]' " *Id.* (quoting § 569.010(1)).

We need not address Appellant's first assertion because, even assuming for the sake of argument that there was sufficient evidence that the MP3 player was forcibly stolen, we conclude that there was insufficient evidence to prove beyond a reasonable doubt that Appellant actually took the MP3 player or affirmatively participated in the taking so as to make him criminally liable as an accomplice.

Appellant contends that there was no evidence that any of the three boys other than the one who actually took the MP3 player did anything other than be physically present when it was taken and that Ivan did not know who or how many of the boys hit him at the end of the chase. The Juvenile Officer appears to concede that there was insufficient evidence to convict Appellant for actually taking the MP3 player. The Juvenile Officer nevertheless contends that the fact that Appellant was with the group of boys before, during, and after the incident raises a reasonable inference that he affirmatively participated in the crime charged.

■■ "A person is deemed criminally responsible for the conduct of others when 'with the purpose of promoting the commission of an offense, [he] aids or agrees to aid or attempts to aid such other person in planning, committing or attempting to commit the offense.' " *State v. Holmquest,* 243 S.W.3d 444, 448 (Mo.App. W.D.2007) (quoting § 562.041.1(2)). "Any evidence that shows affirmative participation in aiding the principal to commit the crime is sufficient to support a conviction. The law imputes to the defendant the criminal agency of his accomplices." *State v.*

*Beggs,* 186 S.W.3d 306, 313 (Mo.App. W.D. 2005) (internal quotation and brackets omitted). "To make a submissible case of accomplice liability, the State has to show that the defendant associated himself with the venture or participated in the crime in some manner, but does not have to show that he personally committed every element of the crime; mere encouragement is enough." *Id.* (internal quotation omitted). "[W]e must determine whether all the facts and circumstances in evidence considered together raise a reasonable inference [that] defendant participated in the offense charged." *State v. Townsend,* 810 S.W.2d 726, 727 (Mo.App. E.D.1991).

Appellant relies primarily on *State v. Neal,* 14 S.W.3d 236 (Mo.App. W.D.2000),[3] in support of his contention that there was insufficient evidence to find him liable as an accomplice. In that case, Neal instigated a fight with the victim at a bar and, when the victim had pinned him to the ground, one of Neal's friends hit the victim over the head with a pool cue, resulting in a large gash. *Id.* at 238. Neal was charged and convicted as an accomplice to assault in the second degree, and he argued on appeal that there was insufficient evidence to show that he aided or encouraged his friend to hit the victim with the pool cue. *Id.* This Court noted that "presence at the scene of the crime, flight therefrom and association with others involved before, during and after commission of the crime are indicia of aiding and abetting." *Id.* at 240 (internal quotation omitted). However, we stated that other courts who had found such evidence sufficient to support a conviction had "relied upon significant evidence beyond these indicia of aid-

**3.** Overruled on other grounds by *State v. Smith,* 229 S.W.3d 85, 95 (Mo.App. W.D. 2007).

ing and abetting." *Id.*[4] We concluded that there was insufficient evidence to convict Neal as an accomplice because "there was no common intent to commit any crime . . . or any actions from which such an intent can be inferred." *Id.* at 241. We reasoned that "the State offered no evidence that Mr. Neal [and his friends] intended to commit any crime together prior to the criminal act charged." *Id.* We further reasoned that the evidence showed "that Mr. Neal acted independently in instigating the fight and that [his friend] joined the fracas of her own volition," in that "[a]ll of the State's witnesses testified that Mr. Neal did not encourage her participation" and there was no "evidence that he intended for [his friend] to join him in the fight." *Id.*

■ For the same reasons noted in *Neal,* we are compelled to conclude that there was insufficient evidence to establish beyond a reasonable doubt that Appellant either actually took the MP3 player or "affirmatively participated" in the crime to make him liable as an accomplice. In the case at bar, it is undisputed that Appellant was with the group of boys earlier in the day, that he was present when the MP3 player was taken, and that he rode away with the other three boys after the incident. However, there was no evidence that the group of boys had planned to take the MP3 player or that any of the four boys, let alone Appellant, encouraged Gage, the boy who took the MP3 player, to do so. Ivan merely testified that he saw the boys get thrown out of the pool area earlier in the day, that they rode up to him together even though he didn't know them,

that one of the boys asked him if he was listening to an MP3 player and what kind of music he was listening to, and that one of the boys then "snatched" the MP3 player from his hand and rode away. Aaron testified that none of the boys discussed taking the MP3 player either before or after they came upon Ivan, that Gage took the MP3 player, that Appellant never encouraged Gage or anyone else to do so, and that Appellant never said anything to Ivan.

Moreover, contrary to the Juvenile Officer's suggestion, there is also no evidence that Appellant "chased" after Ivan to prevent him from retrieving his property. Ivan testified that the other three boys "weren't following [him]" and "stayed right there" when he began to chase the boy who took his MP3 player and that they "caught up" with the two of them when the boy with the device stopped. Aaron also stated that he and the other two boys stayed where they were and went to where Ivan and Gage were after a few minutes. There is also no evidence to suggest that Appellant hit Ivan. Ivan testified that he didn't know how many of the boys hit him or whether it was more than one of them, and Aaron stated that only Gage hit Ivan and that Appellant was a little further from Ivan than another of the boys at around the time that Ivan said the hitting occurred. The Juvenile Officer appears to concede that the evidence does not support a finding that Appellant actually hit Ivan.

Even if the court disbelieved Aaron's testimony, which it was entitled to do,[5] Ivan's testimony was insufficient to show

---

**4.** *See also State v. Townsend,* 810 S.W.2d 726, 727 (Mo.App. E.D.1991) ("One's participation in a crime may be inferred from his presence at the scene, as well as his companionship and conduct both before and after the offense. . . . However, none of these factors alone is enough to sustain a conviction.").

**5.** "[A] trial court is free to believe or disbelieve all, part, or none of the testimony of any witness." *State v. Carroll,* 165 S.W.3d 597, 602 (Mo.App. S.D.2005) (internal quotation omitted).

beyond a reasonable doubt that Appellant participated in planning to take the MP3 player, encouraged the boy to take the device, or attempted to prevent Ivan from retrieving his property by chasing after him or hitting him. The Juvenile Officer concedes that Ivan was unable to identify Appellant as the boy who took his MP3 player, the boy who threw his skateboard, or the boy(s) who hit him, but argues nonetheless that Appellant's presence before, during, and after these proceedings is sufficient to make him an accomplice to the robbery. The Juvenile Officer relies on *State v. Forister*, 823 S.W.2d 504 (Mo.App. E.D.1992), and *State v. Townsend*, 810 S.W.2d 726 (Mo.App. E.D.1991), both of which are factually distinguishable and involved much more participation in the crime than in the case *sub judice.*[6]

For the foregoing reasons, the trial court's judgment is reversed and the cause is remanded for proceedings not inconsistent with this opinion.

All concur.

---

**6.** In *Forister*, 823 S.W.2d at 508, the defendant told two individuals about a house and planned a burglary, drove the other two individuals to the home, stayed in the car while they entered and stole items, drove them all away from the home, and committed three other robberies with one of the individuals within the next three weeks. In *Townsend*, 810 S.W.2d at 727, the defendant entered a convenience store with another individual, stood beside the man as he told the clerk to give him all the money in the cash register or he would kill him, left the store with the man, and initially gave a false statement about his whereabouts on that night when questioned by the police.