

# In the Missouri Court of Appeals
# Eastern District

DIVISION ONE

| | | |
|---|---|---|
| IN THE INTEREST OF: M.T. & M.T., | ) | No. ED99959 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| vs. | ) | |
| | ) | Honorable David C. Mason |
| JUVENILE OFFICER, | ) | |
| | ) | |
| Respondent. | ) | FILED: May 20, 2014 |

J.T. ("Father") appeals from the trial court's judgment, following an adjudication hearing and dispositional hearing, granting petitions filed by the St. Louis Family Court's Juvenile Officer ("Juvenile Officer") in the City of St. Louis, alleging that twins, M.T. ("Daughter") and M.T. ("Son") come within the provisions of Section 211.031, RSMo., requiring the juveniles be placed in protective custody of the Missouri Department of Social Services, Children's Division ("Children's Division") because they were without proper care, custody or support. At the close of the adjudication hearing, the trial court ordered that the juveniles remain in protective custody and be in the legal custody of the Children's Division. The trial court immediately proceeded to a dispositional hearing, granting legal custody to Children's Division, for appropriate placement. However, because the trial court later terminated its jurisdiction, we dismiss Father's appeal.

## I. BACKGROUND

Twins, Daughter and Son were born on August 17, 2012, premature and with breathing problems. Daughter remained in the neonatal intensive care unit ("NICU") for seventeen days and was on a breathing machine for three days during that time. Eventually both of the twins went home to live with Mother, Father, and their maternal grandmother, but Daughter continued to have breathing problems. Daughter was taken to St. Louis Children's Hospital Emergency Department ("SLCH ED") on September 19, 2012, and again on the morning of October 20, 2012. Daughter was diagnosed with "preseptal cellulitis," an infection, given a dose of medication, and sent home with a prescription to fill.

At home on October 20, 2012, Mother left to run errands and Father stayed with the twins. During naptime, Father and Daughter fell asleep with Daughter on Father's chest, and she slid off his chest and onto the bed. Father noticed Daughter having difficulty breathing and at one point, she completely stopped breathing. Father attempted to perform CPR, called 911, and Daughter was resuscitated by a bag-mask ventilation and transported back to the SLCH ED. Daughter was admitted to the Pediatric Intensive Care Unit ("PICU") with respiratory distress.

After examination by Dr. Jamie S. Kondis, M.D., the Children's Division was contacted and an investigation was conducted, producing petitions filed in the Circuit Court of the City of St. Louis, alleging both children were in need of care and treatment due to Daughter being a victim of child maltreatment, physical abuse and abusive head

trauma based on a diagnosis of acute bilateral subdural hematomas and retinal hemorrhages bilaterally[1] with no non-accidental explanation.

A protective custody hearing was held on October 29, 2012, wherein Mother and Father were present and the trial judge appointed counsel for them and appointed a guardian ad litem. The trial court ordered the juveniles to remain in protective custody in the legal custody of the Children's Division for appropriate physical placement.

On November 8, 2012, new, private counsel ("Counsel") entered her appearance on Father's behalf, and his original counsel withdrew. An adjudication hearing was held thereafter on December 10 and 18, 2012, before the Family Court commissioner. The court entered a dispositional order keeping the children in the legal custody of the Children's Division.

Mother and Father filed a Motion for Rehearing, which was granted. This Adjudication Hearing took place on April 11, 2013. The Juvenile Officer's first witness was Dr. Kondis, a member of the Child Protection Team at SLCH, who examined Daughter on October 21, 2012. She testified that Daughter had two symptoms: subdural and retinal hemorrhages, and taken together, were consistent with abusive head trauma. She had reasonable "cause to suspect that [Daughter] was the victim of child maltreatment, physical abuse type, or abusive head trauma."

Father's Counsel called as a witness William Waldrop, M.D., who was employed by Washington University medical school in St. Louis and worked in the Pediatric Operating Room and Pediatric Critical Care Unit. He testified that he could not say with certainty whether Daughter had been shaken, since it is possible for a child to be

---

[1] This diagnosis is commonly referred to as the Shaken Child's Syndrome. In Interest of E.J., 741 S.W.2d 892, 893 (Mo. App. E.D. 1987).

3

diagnosed with acute bilateral subdural hematomas and retinal hemorrhages not resulting from abuse. He stressed his reason for referring Daughter to the child protective division was a precaution based on her injuries. After Dr. Waldrop testified, Dr. Kondis was called on rebuttal. Finally, the Juvenile Officer stated she had one final witness, Detective Colin Tully.

At this point, Father's Counsel was preparing to exit the courtroom and said, "I think if you can just excuse me and let me go be with my Mom." The court asked whether she had another witness, and Counsel said no. She further stated, "As long as I'm finished with the experts, I'm fine." The trial court responded that under the circumstances, it would give Counsel leave to absent herself from the hearing. Counsel then left the hearing, and the trial court proceeded to hear the next witness, Det. Tully, even though Father was unrepresented. Det. Tully testified on behalf of the Juvenile Officer, who then rested.

In Counsel's absence, Mother's attorney advised the trial court that Counsel had planned to call the case manager as a witness. Mother's attorney requested a short recess to contact Counsel to determine what she wanted to question the case manager. The hearing resumed and Mother's attorney called only one witness, Mother.

At the conclusion of the adjudication hearing, the trial court entered Findings and Order of Jurisdiction, dated April 11, 2013, finding by clear and convincing evidence that the two children were without proper care, custody or support and within the provisions of Section 211.031.1. The trial court further ordered that it should proceed to a disposition hearing, which it then held immediately thereafter.

4

During the dispositional hearing, again without Counsel's presence, the Juvenile Officer called the Children's Division case manager as a witness. At the conclusion, the trial court ordered legal custody of the twins be granted to the Children's Division for appropriate placement.

Father did not request a rehearing, nor did he file a motion to amend or for a new hearing. Thereafter, Counsel filed a motion requesting leave to withdraw as Father's attorney and Father received new counsel. On May 13, 2013, Father filed his notice of appeal in this Court, raising two issues: first, whether Father's statutory rights to counsel, pursuant to Section 211.211 were violated and thus, he was denied a fair trial, and second, whether there was sufficient evidence the children were in need of care and treatment pursuant to Section 211.031 and thus, the parents were not entitled to their care, custody and control.

Later, on September 30, 2013, the trial court held a permanency hearing, at which Father failed to appear, and evidence was presented showing Father had been non-compliant with court-ordered services. The trial court followed the Juvenile Officer's recommendation, ordering that the children should be reunited with Mother, who was no longer living with Father. The trial court then terminated its jurisdiction. The Juvenile Officer filed a motion to dismiss Father's appeal for mootness, which has been taken with the case on appeal.

## II. DISCUSSION

As a preliminary matter, the Juvenile Officer has moved that this appeal be dismissed for mootness. After Father filed his appeal, the trial court entered a judgment

5

relieving the Children's Division of custody of both children and returning legal and physical custody to the Mother. The trial court terminated its jurisdiction.

Respondent asserts this subsequent judgment by the trial court terminating jurisdiction and returning custody of the children to the Mother has rendered Father's appeal moot. Father suggests that an exception to the mootness doctrine applies in this case because the decision being appealed has significant collateral consequences in labeling him as a child abuser.

"'A threshold question in any appellate review is the mootness of the controversy.'" State ex rel. Reed v. Reardon, 41 S.W.3d 470, 473 (Mo. banc 2001) (quoting Armstrong v. Elmore, 990 S.W.2d 62, 64 (Mo. App. W.D. 1999)). "'[A] cause of action is moot when the question presented for decision seeks a judgment upon some matter which, if the judgment was rendered, would not have any practical effect upon any then existing controversy.'" Reed, 41 S.W.3d at 473 (quoting Shelton v. Farr, 996 S.W.2d 541, 543 (Mo. App. W.D. 1999)). "'When an event occurs that makes a court's decision unnecessary or makes granting effectual relief by the court impossible, the case is moot and generally should be dismissed.'" Id.

Juvenile Officer argues that a Permanency Hearing and court order of legal and physical custody of the children returned to their mother and the termination of the trial court's jurisdiction subsequent to Father's filing of this appeal render Father's appeal moot. We agree.

Although distinguishable, we find the case, In the Interest of J.L.R., 257 S.W.3d 163 (Mo. App. W.D. 2008), is instructive to our analysis. In J.L.R., the juvenile court held an adjudication and disposition hearing and held that J.L.R.'s father had abused her

6

and that mother did nothing to protect her from further injury. Mother appealed. Mother's custody rights were restored in a subsequent decision by the juvenile court, and then the appellate court found there was no live controversy and dismissed the appeal. The court further found that while courts make an exception to mootness in two situations – when the case becomes moot after submission and argument, and when the issue raised has general public interest and importance and is likely to recur and will otherwise evade appellate review – neither applied in the case of J.L.R., 257 S.W.3d at 166. A third exception to the mootness doctrine allows courts to proceed with the appeal if the decision could have significant collateral consequences for one or more of the parties. Glover v. Michaud, 222 S.W.3d 347, 351 (Mo. App. S.D. 2007).

Here, the children have been returned to Mother but, unlike in J.L.R., Father is appealing. Moreover, this case includes no finding that Father abused his child. Thus, there is nothing here to prejudice Father in this case. The potential for future injury "does not change the lack of a *current* legal controversy." M.W. v. Mabry, 282 S.W.3d 33, 36 (Mo. App. E.D. 2009) (quoting J.L.R., 257 S.W.3d at 166).

Father argues that the issue here is of general public importance, capable of recurring and likely to evade appellate review. While we agree that the applicability of the Juvenile Code under Chapter 211 of the Revised Statutes of Missouri, namely, a party's representation by counsel in all proceedings, Section 211.211, and a parent's liberty interest in the custody and control of his child, In the Interest of K.A.W., 133 S.W.3d 1, 12 (Mo. banc 2004); Troxel v. Granville, 530 U.S. 57, 65 (2000), is a matter of general importance, we believe that the legal controversy involving the Children's Division here has ceased and the facts of this case are uniquely Father's. Any decision in

7

Father's favor here would have no effect on the current custody of the children, who are now with Mother.[2]

Even following the alleged trial court's errors, Father had the opportunity to support his arguments, but failed to appear at the September 30, 2013 permanency hearing to present evidence contradicting his non-compliance with court-ordered services. Father may have the ability to seek, in good faith, other avenues of paternity and custody, but his relief will not be granted through the State Juvenile Officer's petitions and ceased controversy here.

Father's appeal from the trial court's judgment placing Father's children in the protective custody of the Children's Division is moot because the children are now in Mother's full custody and the trial court terminated its jurisdiction here. Because a decision granting Father's points on appeal would be insignificant in granting him relief, we find the legal controversy has ceased and dismiss Father's appeal.

### III.  CONCLUSION

The appeal is dismissed because it is moot.

_____
Roy L. Richter, Presiding Judge

Clifford H. Ahrens, J., concurs
Glenn A. Norton, J., concurs

---

[2] This opinion in no way condones the action of the trial court to proceed with dispositional and adjudication hearings in family court without the presence of a represented party's counsel, as occurred in this case.

8