IN the INTEREST OF: S.B.A.

No. ED 104664

Missouri Court of Appeals, Eastern District, DIVISION THREE.

Filed: October 17, 2017

## ORDER

FOR APPELLANT: Craig A. Johnston, Assistant State Public Defender, Woodrail Centre, 1000 West Nifong, Building 7, Suite 100, Columbia, MO 65203, Sarah Johnson, 1114 Market Street, Ste. 602, St. Louis, MO 63101.

FOR RESPONDENT: David ·C. Winters, Attorney for Juvenile Officer, 1700 South River Road, St. Charles, MO 63303.

ROBERT M. CLAYTON III, Presiding Judge

S.B.A. ("Appellant") appeals the judgment of the juvenile division of the Circuit Court of St. Charles County ("the trial court") finding he had committed two delinquent acts that would have constituted two counts of third-degree assault in violation of section 565.070.1(1) RSMo 2000[1] if they were committed by an adult. We affirm.

## I. BACKGROUND

In this case, the Juvenile Officer's[2] allegations leading to the findings of delinquency set out above were based on accomplice liability. Specifically, the Juvenile Officer's first amended petition alleged that on or about January 13, 2016, (1) Appellant, "acting in concert with two other juveniles, recklessly caused physical injury to K.M. by striking him with a closed fist, causing K.M. to sustain an injury to his nose," and (2) Appellant, "acting in concert with two other juveniles, recklessly caused physical injury to A.H. by striking him in the face" (collectively "the two allegations in the Juvenile Officer's petition").

An adjudication hearing took place with respect to the two allegations in the Juvenile Officer's petition on July 5, 2016.[3] At the hearing, Appellant made oral motions for judgment of acquittal at the close of the Juvenile Officer's evidence and at the close of all the evidence, which the trial court denied. On July 5, the trial court entered an order and judgment of jurisdiction, which found that based upon the evidence presented at the adjudication hearing, the two allegations in the Juvenile Officer's petition were true beyond a reasonable doubt. Consequently, the trial court's decision also found Appellant had committed two delinquent acts that would have constituted two counts of third-degree assault in violation of section 565.070.1(1) if they were committed by an adult; the trial court assumed jurisdiction over Appellant; and the trial court placed Appellant in the continued custody of his mother pending a dispositional hearing.

The trial court held the dispositional hearing on July 18, and the trial court entered an order and judgment of disposition regarding delinquency, finding continued jurisdiction of Appellant and placing him in the continued custody of his mother subject to court supervision. The rules of court supervision were attached to the trial court's decision and were set out in an agreement signed by Appellant, his moth-

---

1. All further statutory references to section 565.070 are to RSMo 2000, which was the version of the third-degree assault statute in effect at the time the events giving rise to Appellant's alleged delinquent acts occurred. Section 565.070, like other criminal statutes, was affected by sweeping changes to the Missouri Criminal Code ("the Criminal Code"), which went into effect on January 1, 2017 and resulted in criminal statutes being amended and/or transferred to another section of the Criminal Code. All further statutory references to criminal statutes in this opinion are to versions of the applicable statutes in effect at the time the events giving rise to

Appellant's alleged delinquent acts occurred, and the January 1, 2017 changes to the Criminal Code are not relevant to this appeal. In addition, all further statutory references are to RSMo 2000 unless otherwise indicated.

2. All references to "the Juvenile Officer" are to Respondent Kenneth Simmons, Juvenile Officer of the Eleventh Judicial Circuit.

3. To avoid unnecessary repetition, the specific evidence presented at Appellant's adjudication hearing will be set forth in relevant part in Section II.B.3. of this opinion.

er, and a representative of the Juvenile Officer.

On July 21, Appellant filed notice of appeal with this Court. Subsequently, on April 3, 2017, the trial court entered an order terminating its jurisdiction over Appellant, finding he had successfully completed all aspects of court supervision and was no longer in need of the care and protection of the court. The submission of this appeal followed.

## II. DISCUSSION

■ Appellant raises two points on appeal, both of which assert there was insufficient evidence to support the trial court's findings that he committed delinquent acts of third-degree assault. In response, the Juvenile Officer filed a motion to dismiss Appellant's appeal on the grounds it is moot; that motion has been taken with the case. Because the issue of whether an appeal is moot is a threshold question of appellate review, we will consider the Juvenile Officer's motion to dismiss before examining the merits of Appellant's claims on appeal. *See Broyles v. Department of Community Health & Environment of St.*

*Charles County*, 456 S.W.3d 517, 520 (Mo. App. E.D. 2015) ("[a] threshold question in any appellate review of a controversy is the mootness of the controversy").

## A. Whether Appellant's Appeal is Moot

■ An appeal of a trial court's judgment is considered to be moot if the judgment rendered has no practical effect on an existing controversy, i.e., an existing controversy is not susceptible to some relief. *Id.* Accordingly, "[w]hen something occurs that makes a decision on appeal unnecessary or makes it impossible for the appellate court to grant effective relief, the appeal is moot and generally should be dismissed." *Id.* Nevertheless, an appellate court may exercise its discretion to decide an otherwise moot appeal under three circumstances, (1) where the case becomes moot after it is argued and submitted; (2) where the issue raised in the case is one of general public interest and importance, is likely to recur, and will otherwise evade appellate review; or (3) "if the decision could have significant collateral consequences for one or more of the parties." [4, 5]

4. For purposes of this appeal, we will refer to the three circumstances under which an appellate court may exercise its discretion to decide an otherwise moot appeal as "the three exceptions to the mootness doctrine." *See M.T. v. Juvenile Officer*, 431 S.W.3d 539, 542-43 (Mo. App. E.D. 2014) (providing a similar characterization; *see also In re A.G.R.*, 359 S.W.3d 103, 108 (Mo. App. W.D. 2011). Additionally, we will refer to the third exception, i.e., "if the decision could have significant collateral consequences for one or more of the parties," as "[the] third exception to the mootness doctrine." *M.T.*, 431 S.W.3d at 543.

5. For the reasons discussed below, we recognize and apply the third exception to the mootness doctrine in the instant case, which has been previously recognized and applied in multiple cases before this Court and the Western District. *See In Interest of N.R.W.*, 482 S.W.3d 473, 475 (Mo. App. E.D. 2016) (recog-

nizing and explicitly applying the exception); *M.T.*, 431 S.W.3d at 543 (recognizing the exception); *A.G.R.*, 359 S.W.3d at 108 (same); *Lamar Co., LLC v. City of Kansas City*, 330 S.W.3d 767, 771 n.2 (Mo. App. W.D. 2010) (same); *T.S.G. v. Juvenile Officer*, 322 S.W.3d 145, 148 (Mo. App. W.D. 2010) (recognizing and implicitly applying the exception); *Reiz v. Board of Zoning Adjustment of Kansas City*, 316 S.W.3d 331, 335-36 (Mo. App. W.D. 2010) (same); *but see In Interest of J.T.S.*, 462 S.W.3d 475, 479-80, 480 n.6 (Mo. App. W.D. 2015) (choosing *only* not to follow our Court's recognition of the exception in *M.T.*, finding "[w]e [ ] do not agree [with *M.T.*] that a third mootness exception exists," and yet failing to mention or explicitly overrule previous cases from the Western District recognizing and applying the exception); *see also In Interest of A.D.T.*, No. ED104591, 527 S.W.3d 916, 919, 2017 WL 4126369 at *2 n.3 (Mo. App. E.D. Sept. 19, 2017) (declining to expressly recog-

*M.T. v. Juvenile Officer*, 431 S.W.3d 539, 542-43 (Mo. App. E.D. 2014); *see In re A.G.R.*, 359 S.W.3d 103, 108 (Mo. App. W.D. 2011) (an appellate court has discretion to decide an otherwise moot appeal when one of the exceptions to the mootness doctrine applies).

■ In the Juvenile Officer's motion to dismiss, he argues Appellant's appeal should be dismissed as moot because the trial court's April 3, 2017 order terminated its jurisdiction over S.B.A. and therefore, there is no longer an existing controversy susceptible to some relief. The Juvenile Officer further contends this Court does not have discretion to decide Appellant's appeal because none of the three exceptions to the mootness doctrine apply to this case.

In his suggestions in opposition to the Juvenile Officer's motion to dismiss, Appellant asserts that, *inter alia*, the third exception to the mootness doctrine applies to this case. Specifically, Appellant argues the trial court's judgment could have significant collateral consequences for Appellant because there is a movement to make more juvenile records public. In support of his argument, Appellant cites to *In Interest of N.R.W.*, 482 S.W.3d 473 (Mo. App. E.D. 2016) and *T.S.G. v. Juvenile Officer*, 322 S.W.3d 145 (Mo. App. W.D. 2010). In *N.R.W.* and *T.S.G.*, like in the instant case, the appellate court considered whether a juvenile's appeal of an adjudication was moot under circumstances where the trial court no longer had jurisdiction over the juvenile as of the time of the appeal. *See* 482 S.W.3d at 475-76; 322 S.W.3d at 147-

nize whether the exception exists because it was not presented as an issue in the case, but finding *J.T.S.*'s decision not to follow *M.T.* presented "some question as to whether there is a third exception to the mootness doctrine").

48; *see also State v. Thomas*, 70 S.W.3d 496, 504-05 (Mo. App. E.D. 2002) and section 211.041 RSMo Supp. 2009 and section 219.021.1 RSMo Supp. 2016 (indicating the trial court, in *N.R.W.* no longer had jurisdiction over the juvenile because he was over eighteen years old and had been previously committed to the division of youth services).

In *N.R.W.*, the juvenile was adjudicated delinquent for an offense that would have been considered a felony if it was committed by an adult. 482 S.W.3d at 475. In considering whether to decide the juvenile's appeal on the merits or dismiss it as moot, our Court found section 211.321.2(2) provides that the records of the juvenile's dispositional hearing on a "felony offense" are public information to the same extent as records in criminal proceedings, and such evidence could be introduced during the sentencing phase if the juvenile were later tried for an offense as an adult. *See N.R.W.*, 482 S.W.3d at 475, 475 n.1 (citing, *inter alia*, section 211.321.2(2) and *State v. Sapien*, 337 S.W.3d 72, 77-78 (Mo. App. W.D. 2011)); *see also* 211.321.2(2) RSMo Supp. 2005. Accordingly, this Court held the adjudication could have significant collateral consequences for the juvenile into his adult life, and therefore, the third exception to the mootness doctrine applied. *N.R.W.*, 482 S.W.3d at 475. Further, we did not dismiss the juvenile's appeal but instead considered the merits of the juvenile's claims. *Id.* at 475-79.

In *T.S.G.*, the juvenile was adjudicated delinquent for a "status offense" of behavior injurious to the juvenile's welfare [6] af-

6. "The status offense which the court found to have been committed by [the juvenile in] *T.S.G.* is found in [s]ection 211.031.1(2)(d) [RSMo Supp. 2006], and it gives the court jurisdiction over a child who either resides or is found in the county and who is in need of treatment because 'the behavior or associa-

ter the court amended the juvenile's officer petition at the close of the evidence. 322 S.W.3d at 147-48. In determining whether to decide the juvenile's appeal on the merits or dismiss it as moot, the Western District considered the juvenile's arguments that the third exception to the mootness doctrine applied to her status offense. *Id.* at 148. The juvenile argued the exception applied because the original offense she was charged with was sexual in nature, and therefore, it was possible the juvenile could later be subject to sex offender registration due to "the rapidly changing statutes in Missouri dealing with this area of law[.]" *Id.* The juvenile also argued the third exception to the mootness doctrine applied because of the existence of "the movement to make more juvenile records public[.]" *Id.* In addition, the *T.S.G.* Court also considered the juvenile officer's concession on appeal that the adjudication could have significant collateral consequences for the juvenile in the future. *Id.* Under those circumstances, the Western District implicitly found the third exception to the mootness doctrine applied, and the Court did not dismiss the juvenile's appeal but instead considered the merits of the juvenile's claims. *Id.* at 147-50.

We acknowledge the instant case is distinguishable from *N.R.W.* and *T.S.G.* because Appellant was adjudicated delinquent for offenses that would be considered misdemeanors if they were committed by an adult[7] instead of the "felony offense" at issue in *N.R.W.* or the "status offense" and original charge that was sexual in nature at issue in *T.S.G. See* 482 S.W.3d at 475; 322 S.W.3d at 147-48. In addition, unlike in *T.S.G.*, there is no

concession by the Juvenile Officer in this case that Appellant's adjudication could have significant collateral consequences for him in the future. *See* 322 S.W.3d at 148. Nevertheless, we find *N.R.W.* and *T.S.G.* are instructive to our ultimate determination that the third exception to the mootness doctrine applies to this case.

First, we agree with Appellant's contention that, as the juvenile argued in *T.S.G.*, there is a movement to make more juvenile records public. *See* 322 S.W.3d at 148; *see generally State v. Prince*, No. ED102938, —— S.W.3d ——, ——, 2017 WL 2644431 at *1, 8 (Mo. App. E.D. June 20, 2017) (the State argued on appeal that the trial court did not err in admitting records of the defendant's juvenile adjudication at trial because the records fell within the scope of a Missouri constitutional provision allowing for the admission of some evidence of prior criminal acts); *see also State ex rel. Hawley v. Heagney*, 523 S.W.3d 447, 450 (Mo. banc 2017) ("in deciding whether a case is moot, an appellate court is allowed to consider matters outside the record") (quotations omitted). Furthermore, it is foreseeable that the movement to make more juvenile records public could result in, (1) records of a juvenile's dispositional hearing on an offense other than one categorized as a "felony" to be considered public information to the same extent as records in criminal proceedings; (2) such evidence to possibly be introduced during the sentencing phase if the juvenile were later tried for an offense as an adult; and (3) an individual having other lifelong consequences and

tions of the child are otherwise injurious to his or her welfare or to the welfare of others.'" *T.S.G.*, 322 S.W.3d at 147 n.1, 149 (quoting section 211.031.1(2)(d) RSMo Supp. 2006).

7. *See* section 565.070.1(1) and section 565.070.2 (providing a person commits the class A misdemeanor of third-degree assault if, *inter alia*, he "recklessly causes physical injury to another person").

stigma related to his juvenile adjudication. *See id.*; *see also N.R.W.*, 482 S.W.3d at 475; section 211.321.2(2).

Under these circumstances, and similar to our Court's holding in *N.R.W.*, we find Appellant's adjudication could have significant collateral consequences for Appellant into his adult life, and therefore, the third exception to the mootness doctrine applies. *See* 482 S.W.3d at 475; *see also T.S.G.*, 322 S.W.3d at 148. To hold otherwise would possibly imply that the merits of a juvenile adjudication could not be reviewed on appeal simply because, over time, a juvenile has successfully completed all aspects of supervision ordered by the court or the individual has simply reached an age where the court no longer has jurisdiction over him.[8] It is this Court's view that such a result would be unacceptable and minimize the value of an individual's pursuit of justice and/or vindication in a court proceeding finding he, as a juvenile, committed an act that would have constituted the violation of a criminal statute if it was committed by an adult. Based on the foregoing, the Juvenile Officer's motion to dismiss is denied, and we exercise our Court's discretion to consider the merits of Appellant's claims on appeal.[9] *See N.R.W.*, 482 S.W.3d at 475-79; *T.S.G.*, 322 S.W.3d at 147-50.

## B. The Merits of Appellant's Claims on Appeal

Appellant raises two points on appeal. Appellant's first point alleges there was insufficient evidence he committed the delinquent act of third-degree assault against K.M. under a theory of accomplice liability, while Appellant's second point on appeal contends there was insufficient evidence he committed the delinquent act of third-degree assault against A.H. under a theory of accomplice liability.

### 1. The Standard of Review

Our Court reviews an appeal of a juvenile adjudication under the same standard as any other court-tried case. *In re D.M.*, 370 S.W.3d 917, 919, 922 (Mo. App. E.D.

**8.** *See* section 211.041 RSMo. Supp. 2009 (explaining "the jurisdiction of the child may be retained for the purpose of [Chapter 211] until he or she has attained the age of twenty-one years except in cases where he or she is committed to and received by the division of youth services"); section 219.021.1 RSMo Supp. 2016 (finding the division of youth services "shall not keep any youth beyond his eighteenth birth date, except upon petition and a showing of just cause in which case the division may maintain custody until the youth's twenty-first birth date").

**9.** We note that the Juvenile Officer argues Appellant's concern of a movement to make more juvenile records public should not be considered by our Court because it is "mere[ly a] speculative future collateral consequence of [Appellant's] adjudication." In support of its argument, the Juvenile Officer cites to *In re J.L.R.*, 257 S.W.3d 163, 166 (Mo. App. W.D. 2008), which held a mother's appeal of an adjudication relating to the abuse of her child should be dismissed as moot where "the mere potential that [the case] could harm [the mother's] employment opportunities" was speculative and "d[id] not change the lack of a current legal controversy between her and the State." (emphasis omitted). We find the Juvenile Officer's argument lacks merit for two reasons. First, *J.L.R.* is distinguishable because that case did not consider the third exception to the mootness doctrine, which is the exception our holding is based upon. *See id.* at 165-66. Second, the third exception to the mootness doctrine, providing an appellate court may exercise its discretion to decide an otherwise moot appeal "*if* the decision *could have* significant collateral consequences for one or more of the parties" is arguably speculative by its very nature. *M.T.*, 431 S.W.3d at 543 (emphasis added); *see A.G.R.*, 359 S.W.3d at 108. Accordingly, if the Juvenile Officer's argument prevailed, it is difficult to envision a scenario where the third exception to the mootness doctrine would ever apply, eliminating the precedential effect of prior appellate decisions recognizing and applying the exception.

2012) (superseded by constitutional amendment on other grounds)[10]; *In re J.A.H.*, 293 S.W.3d 116, 119 (Mo. App. E.D. 2009). Accordingly, we will affirm the trial court's judgment unless it is not supported by substantial evidence, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Id.*

In reviewing a challenge to the sufficiency of the evidence to support a juvenile adjudication, our Court's role is to determine whether the juvenile officer has introduced sufficient evidence from which a reasonable person could have concluded the accused committed the delinquent act that would have constituted a violation of a criminal statute if it was committed by an adult. *See In re T.B.*, 351 S.W.3d 243, 244 (Mo. App. E.D. 2011); *J.A.H.*, 293 S.W.3d at 119. Furthermore, the juvenile officer has the burden of proving each element of the criminal offense beyond a reasonable doubt, and the juvenile officer may meet this burden by the presentation of circumstantial evidence alone. *T.B.*, 351 S.W.3d at 245-46; *J.A.H*, 293 S.W.3d at 120.

In determining whether there is sufficient evidence to affirm a juvenile adjudication, "the trial court's decision must be given the same deference as it would be given in an adult criminal proceeding." *D.M.*, 370 S.W.3d at 922. Accordingly, we view the evidence and reasonable inferences therefrom in the light most favorable to the trial court's judgment, and we disregard all contrary evidence and inferences. *Id.*; *T.B.*, 351 S.W.3d at 244; *J.A.H.*,

293 S.W.3d at 119. In addition, "[t]he credibility of witnesses and the weight to be given their testimony is a matter for the trial court, which is free to believe none, part, or all of their testimony," and an appellate court defers to the trial court on such matters. *K.A.R. v. Juvenile Officer*, 412 S.W.3d 475, 483 (Mo. App. W.D. 2013) (quotations omitted); *J.M.G. v. Juvenile Officer*, 304 S.W.3d 193, 196 (Mo. App. W.D. 2009).

**2. Appellant's Alleged Delinquent Acts and the General Law Pertaining to Those Acts**

In this case, the two allegations in the Juvenile Officer's petition alleged Appellant had committed delinquent acts that would have constituted two counts of third-degree assault in violation of section 565.070.1(1) if they were committed by an adult, and both allegations were based on accomplice liability. Specifically, the Juvenile Officer's first amended petition alleged that on or about January 13, 2016, (1) Appellant, "acting in concert with two other juveniles, recklessly caused physical injury to K.M. by striking him with a closed fist, causing K.M. to sustain an injury to his nose," and (2) Appellant, "acting in concert with two other juveniles, recklessly caused physical injury to A.H. by striking him in the face."

Section 565.070 provides in relevant part that a person commits the class A misdemeanor of third-degree assault if, *inter alia*, he "recklessly causes physical injury to another person[.]" Section 565.070.1(1) and .2. "A person 'acts recklessly' ... when he consciously disregards a substan-

---

10. All citations to *D.M.*, 370 S.W.3d 917 found in this opinion are to principles of law pertaining to the standard of review, and these principles of law have not been superseded by constitutional amendment. *See State v. Thigpen*, No. ED103992, — S.W.3d —, —–—, 2017 WL 3388977 at *5, 10-11 (Mo. App. E.D. Aug. 8, 2017) (citing *D.M.* only for the proposition that the case's holding that a juvenile's behavioral and disciplinary history was inadmissible propensity evidence took place before the enactment of Article I, section 18 of the Missouri Constitution, which is a constitutional amendment allowing for the admissibility of some propensity evidence).

tial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." Section 562.016.4 (emphasis omitted).

"A person is deemed criminally responsible for the conduct of others when 'with the purpose of promoting the commission of an offense, he aids or agrees to aid or attempts to aid such other person in planning, committing or attempting to commit the offense.'" *M.A.A. v. Juvenile Officer*, 271 S.W.3d 625, 629 (Mo. App. W.D. 2008) (quoting, *inter alia*, section 562.041.1(2)). Pursuant to the concept of accomplice liability, all persons who act in concert to commit an offense are equally responsible for the act. *Id.*; *State v. Myles*, 479 S.W.3d 649, 660 (Mo. App. E.D. 2015). In addition, "[a] [person] who embarks upon a course of criminal conduct with others is responsible for those [offenses] which he could reasonably anticipate would be part of that conduct." *State v. Brewer*, 476 S.W.3d 321, 324 (Mo. App. E.D. 2015).

To support an adjudication based on accomplice liability, the juvenile officer need only show that the accused associated himself with the venture or participated in the offense in some manner; there is no need to show the accused personally committed every element of the crime. *Myles*, 479 S.W.3d at 660; *M.A.A.*, 271 S.W.3d at 629. Instead, any direct or circumstantial evidence demonstrating any form of affirmative participation in the offense is sufficient to support an adjudication. *Id.*; *State v. Nance*, 880 S.W.2d 578, 580 (Mo. App. E.D. 1994). In other words, "we must determine whether all the facts and circumstances in evidence considered together raise a reasonable inference [an accused] participated in the offense [in question]." *State v. Townsend*, 810 S.W.2d 726, 727 (Mo. App. E.D. 1991).

### 3. The Evidence Presented at Appellant's Adjudication Hearing

The following was presented at Appellant's adjudication hearing. On January 13, 2016, friends A.H., K.M., and D.S. were at A.H.'s residence. K.M. and D.S. were helping A.H. fix his front porch, and A.H. was using a hammer. Later that day when the three boys were inside of A.H.'s house, there was a knock on the door, and A.H. went outside. A.H. then saw Appellant, B.S. and C.S., three boys A.H. knew from school, standing up the street, and B.S. said, "let's fight, let's fight." A.H., K.M., and D.S. then walked up the street to where Appellant, B.S., and C.S. were standing, and A.H. discarded the hammer.

C.S. then grabbed the hammer, and as K.M. tried to take it from him, someone punched K.M. in the nose, breaking it. No one saw who punched K.M.

Subsequently, B.S. and A.H. began to punch each other, C.S. hit A.H. once, and Appellant hit A.H. a couple of times. As a result of the fight, A.H. had a black eye, swollen lip, three bumps on his head, scratches, pain, problems with his memory, and problems sleeping.

A neighbor witnessed the fight between the two groups of boys. When he called 911, Appellant, B.S., and C.S. fled the scene together.

In addition, a little over a month after the incident, Officer David Fruits with the St. Charles City Police Department spoke with Appellant about the fight on the front porch of Appellant's residence. During their conversation, Appellant told Officer Fruits he did not remember being involved in the fight.

### 4. Whether there was Sufficient Evidence Appellant Committed the Delin-

**quent Act of Third-Degree Assault Against K.M.**

◼ We now turn to Appellant's first point on appeal, in which he contends there was insufficient evidence he committed the delinquent act of third-degree assault against K.M. under a theory of accomplice liability. With respect to this delinquent act, the trial court found, based upon the evidence adduced at the adjudication hearing, it was true beyond a reasonable doubt that Appellant, "acting in concert with two other juveniles, recklessly caused physical injury to K.M. by striking him with a closed fist, causing K.M. to sustain an injury to his nose."

Appellant argues the Juvenile Officer failed to prove he affirmatively participated in the assault against K.M., because there was no evidence Appellant was the individual who punched K.M. and there was no evidence Appellant knew K.M. was going to be at A.H.'s house prior to the fight or at the fight itself. We disagree.

As indicated above, because this case involves an adjudication based on accomplice liability, it was not necessary for the Juvenile Officer to show Appellant personally committed every element of third-degree assault. *Myles*, 479 S.W.3d at 660; *M.A.A.*, 271 S.W.3d at 629. In addition, it was not necessary for the Juvenile Officer to show that before the fight, Appellant intended to commit the offense against K.M. specifically. *See Brewer*, 476 S.W.3d at 324. Instead, the Juvenile Officer only needed to demonstrate that Appellant associated himself with the venture or participated in the offense in some manner, and any circumstantial evidence demonstrating any form of affirmative participation in the offense was sufficient to support Appellant's adjudication. *Myles*, 479 S.W.3d at 660; *M.A.A.*, 271 S.W.3d at 629; *Nance*, 880 S.W.2d at 580.

◼ An accused's affirmative participation in an offense may be reasonably inferred from: his presence at the scene of the offense; his association with others involved before, during, and after the offense; his conduct before the offense; his conduct during the offense, including making no effort to assist the victims; and his conduct after the offense, including fleeing from the scene and failing to talk to the police relatively soon after the incident. *State v. Davison*, 601 S.W.2d 623, 628 (Mo. 1980); *State v. Kobel*, 927 S.W.2d 455, 459 (Mo. App. W.D. 1996); *Nance*, 880 S.W.2d at 580; *Townsend*, 810 S.W.2d at 727. While none of the preceding factors alone is sufficient to uphold an adjudication, Missouri Courts have considered the presence of multiple factors to be sufficient evidence of an accused's affirmative participation in an offense. *See id.*

Viewing the evidence in this case and all reasonable inferences therefrom in the light most favorable to the trial court's judgment, we find there was sufficient evidence of Appellant's affirmative participation in the assault against K.M. Importantly, Appellant was not merely present at the scene of the offense against K.M. Rather, Appellant was directly involved in the fight between the two groups of boys, hitting A.H. a couple of times. By being involved in the fight against A.H., K.M., and D.S., Appellant could reasonably anticipate K.M. would be punched and injured as a result of the fight. *See Brewer*, 476 S.W.3d at 324 ("[a] [person] who embarks upon a course of criminal conduct with others is responsible for those crimes which he could reasonably anticipate would be part of that conduct").

In addition, Appellant continually associated himself with B.S. and C.S. before the offense: when the three boys knocked on the door of A.H.'s house; when B.S. then told A.H., "let's fight, let's fight"; and

when A.H., K.M., and D.S. then approached Appellant, B.S., and C.S. Appellant also continually associated himself with B.S. and C.S. during and after the time K.M. was punched in the nose and injured. Finally, during and immediately after the assault against K.M., Appellant made no effort to assist K.M.; instead, Appellant fled from the scene with B.S. and C.S. and did not talk to the police until over a month after the incident.

Because a reasonable person could have concluded from all of the preceding facts and circumstances that Appellant affirmatively participated in the assault against K.M., Appellant's first point on appeal is denied.[11] *See Davison,* 601 S.W.2d at 628; *Myles,* 479 S.W.3d at 660; *T.B.,* 351 S.W.3d at 244; *J.A.H.,* 293 S.W.3d at 119; *M.A.A.,* 271 S.W.3d at 629; *Kobel,* 927 S.W.2d at 459; *Nance,* 880 S.W.2d at 580; *Townsend,* 810 S.W.2d at 727.

### 5. Whether there was Sufficient Evidence Appellant Committed the Delinquent Act of Third-Degree Assault Against A.H.

In Appellant's second and final point on appeal, he contends there was insufficient evidence he committed the delinquent act of third-degree assault against A.H. under a theory of accomplice liability. With respect to this delinquent act, the trial court found, based upon the evidence adduced at the adjudication hearing, it was true beyond a reasonable doubt that Appellant, "acting in concert with two other juveniles, recklessly caused physical injury to A.H. by striking him in the face."

In this point on appeal, Appellant does not dispute the Juvenile Officer presented sufficient evidence that he affirmatively participated in the assault against A.H. Instead, Appellant only contends there was insufficient evidence to support the trial court's finding he committed the delinquent act of third-degree assault against A.H. because there was evidence A.H. "consented" to the infliction of physical injury by implicitly agreeing to fight Appellant. Appellant further maintains consent was an available defense for Appellant pursuant to section 565.080.1(1).

Section 565.080.1 states in relevant part: "When conduct is charged to constitute an offense because it causes or threatens physical injury, consent to that conduct or to the infliction of the injury is a defense only if [*inter alia*]: (1) The physical injury consented to or threatened by the conduct is not serious physical injury[.]" Additionally, section 565.080.2 provides, "[t]he defendant shall have the burden of injecting the issue of consent." In order to meet his burden of injecting the issue of consent, an accused must raise the issue to the trial court *and* must produce evidence of consent. *See State v. Churchill,* 454 S.W.3d

---

11. In support of his argument that there was insufficient evidence to show Appellant's affirmative participation in the offense against K.M., Appellant relies on *State v. Neal,* 14 S.W.3d 236 (Mo. App. W.D. 2000) and *M.A.A.,* 271 S.W.3d 625. *Neal* and *M.A.A.* held there was insufficient evidence an accused committed an offense under a theory of accomplice liability where, *inter alia,* there was no evidence the accused and his accomplices intended to commit any crime together prior to charged offense. *See Neal,* 14 S.W.3d at 238-41 (overruled on other grounds by *State v. Smith,* 229 S.W.3d 85, 95 (Mo. App. W.D. 2007)); *M.A.A.,* 271 S.W.3d at 629-30. The facts and circumstances of this case are distinguishable from those in *Neal* and *M.A.A.* because here, the evidence demonstrated Appellant continued to associate with B.S. and C.S. after B.S. told A.H., "let's fight, let's fight" and Appellant then hit A.H. A reasonable inference from this evidence is that Appellant, B.S., and C.S. intended to commit a delinquent act of an assault together prior to the offense against K.M. Accordingly, we find Appellant's reliance on *Neal* and *M.A.A.* is misplaced.

328, 331, 341 (Mo. banc 2015) (finding a defendant did not meet her burden of injecting the issue of retraction in a court-tried perjury case where she did not raise the issue to the trial court but instead raised the claim for the first time on appeal); *State v. Latall*, 271 S.W.3d 561, 563-65 (Mo. banc 2008) (finding a defendant met his burden of injecting the issue of good cause when he produced evidence of the issue, i.e., when the issue was supported by the evidence); *see also* section 556.051(1).

In this case, Appellant concedes that "arguably, the [trier of fact] might have found that [A.H.] suffered serious physical injury" and "[c]onsent is not a defense [under section 565.080.1(1)] when the physical injury consented to is serious physical injury." Nonetheless, Appellant claims consent was still an available defense because the court did not find serious physical injury occurred and the court was not asked to make that determination since the Juvenile Officer's petition did not allege Appellant's conduct caused A.H. *serious* physical injury. For purposes of this appeal only, we assume that despite Appellant's concessions, it was possible for con-sent to be an available defense in this case.[12]

Nevertheless, based on the record before us in this case, Appellant did not raise the issue of consent to the trial court, either before, during, or after his court-tried hearing. The transcript of the adjudication hearing reflects Appellant raised a sufficiency-of-the-evidence claim during oral motions for judgment of acquittal, arguing he should not be found guilty of the delinquent act against A.H. only because, (1) there was insufficient evidence Appellant was involved in the fight because there were many inconsistencies in the testimony presented at the hearing and there was no physical identification of Appellant; and (2) Appellant acted in self-defense or in defense of others. The issue of consent was also not raised by Appellant in any other portion of the record on appeal.[13]

In sum, the issue of consent was not a part of Appellant's trial strategy, the issue was not raised to the trial court in any manner such as making the trial court aware of section 565.080 or the portion of the Notes on Use to MAI-CR 3d 319.16 discussing the defense,[14] and the issue is

---

12. This opinion takes no position on, (1) whether any of A.H.'s injuries meet the statutory definition of "serious physical injury"; or (2) whether the consent defense is unavailable to an accused if a court determines a victim's physical injury is "serious" but "serious physical injury" was not alleged in the State's petition or charging document. *See* section 556.061(28) RSMo Supp. 2014 (defining "[s]erious physical injury" as "physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body"). It is unnecessary for our Court to make a determination as to either of those issues because, as discussed below, our determination that Appellant failed to raise the defense of consent to the trial court is dispositive of this point.

13. Although Appellant's counsel stated on the record during the adjudication hearing that his motions for judgment of acquittal were in writing, the docket sheets do not reflect such motions were filed in the trial court and no written motions for judgment of acquittal are a part of the record on appeal in this case. Similarly, the docket sheets do not reflect any pre-hearing or post-hearing motions were filed by Appellant that asserted the issue of consent, and no such motions have been included as part of the record on appeal.

14. *See* Note on Use No. 8 to MAI-CR 3d 319.16 (discussing how the instruction on third-degree assault should be modified when a defendant injects the issue of consent) (effective September 1, 2001 and applicable to third-degree assault offenses committed from September 1, 2001 to December 31, 2016);

being raised for the first time on appeal. Under these circumstances, we find Appellant did not meet his burden of injecting the issue of consent pursuant to section 565.080.2, and the trial court did not err in failing to apply a defense that was not brought to its attention. Point two is denied. *See Churchill*, 454 S.W.3d at 341 (denying an appellant-defendant's point under similar circumstances).

### III. CONCLUSION

The trial court's judgment is affirmed.

Gary M. Gaertner, Jr., P.J., and Angela T. Quigless, J., concur.

*see also* Note on Use No. 1 to MAI-CR 4d 419.14 (stating MAI-CR 4d 419.14 is a revision of MAI-CR 3d 319.16 (effective 9-1-01)

and applies to offenses committed on or after January 1, 2017).