

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| IN THE INTEREST OF: P.D.W.; | ) | |
| | ) | |
| JUVENILE OFFICER, | ) | WD83186 |
| | ) | |
| Respondent, | ) | OPINION FILED: August 11, 2020 |
| | ) | |
| v. | ) | |
| | ) | |
| S.W. AND M.W., | ) | |
| | ) | |
| Appellants. | ) | |

**Appeal from the Circuit Court of Buchanan County, Missouri**
The Honorable Patrick K. Robb, Judge

Before Division Three: Gary D. Witt, Presiding Judge, Lisa White Hardwick, Judge and
Thomas N. Chapman, Judge

S.W. ("Father") and M.W. ("Mother") appeal the judgment of the Juvenile Division of the Circuit Court of Buchanan County, Missouri, finding that their daughter P.W. was without proper care, custody, and support, and placing P.W. in the legal and physical custody of Children's Division. Father and Mother allege that the court erred in finding that there was clear and convincing evidence to establish that P.W. was without proper care, custody, and support because there was no evidence that P.W. was injured while in the care of her parents. Because the issue is moot, we dismiss the appeal.

## Factual and Procedural Background

On May 10, 2019, when P.W. was five months old, Mother took P.W. to the doctor's office to be examined for coughing and congestion. While examining P.W., her primary care physician noted bruising on P.W. Mother stated that two days prior to the visit she had noticed bruises on P.W.'s back that looked like fingerprints and Mother was concerned they were caused by picking P.W. up. Mother had also previously noticed bruises on P.W.'s buttocks. Mother stated that she had no concerns about abuse but was concerned that P.W. bruises easily. The physician then referred P.W. to Children's Mercy Hospital for further evaluation.

A skeletal survey was performed on P.W. at Children's Mercy Hospital. The skeletal survey showed two fractures; a displaced healing left ninth rib fracture and a nondisplaced healing left proximal tibial fracture. Additionally, there was a possible compression fracture to P.W.'s T10 vertebral body, although this could have been due to a developmental variation. Mother and Father had no explanation for the injuries and denied any drops, falls, kicks, or other trauma to P.W.

Additionally, while at Children's Mercy Hospital, Mother related a prior incident "toward the end of her maternity leave," when P.W. was in the sole care of Mother and Father, in which she found two yellow bruises on P.W.'s bottom. Mother also voiced concerns regarding P.W.'s in-home daycare. Further, Mother disclosed two other incidents in which P.W. had a bruise on her finger and one on her nose. Mother believed these were caused by P.W. hitting her hand and dropping a toy on her face. Further, Mother and Father

reported that a few days prior, P.W. woke up screaming and crying and was bleeding from her mouth or gums. The parents attributed the bleeding to P.W. scratching her gums.

On May 14, 2019, the Buchanan County Juvenile Office filed a petition in the juvenile court alleging that, pursuant to section 211.031.1(b),[1] P.W. was without proper care, custody, or support ("Petition"). The Petition specifically alleged that P.W. was diagnosed with a displaced healing left ninth rib fracture, a nondisplaced healing left proximal tibial fracture, was observed to have multiplanar bruising on her buttocks and back, and Mother and Father were unable to provide a plausible explanation for P.W.'s injuries. There was no known suitable relative placement located in Missouri so the court ordered that P.W. be placed in protective custody with Children's Division on May 14, 2019.

A protective custody hearing was held on May 17, 2019. The court ordered that P.W. continue in protective custody of the Children's Division.

On July 11, 2019, Mother and Father filed a Motion to Dismiss ("Motion to Dismiss") alleging that there was a lack of clear and convincing evidence to suggest that P.W. was injured while in the care of her parents. The motion was taken up at the adjudication hearing held on July 12, 2019. The court took the case under advisement and scheduled the case for a disposition hearing on July 18, 2019.

At the July 18 hearing, the court found the allegations of the Petition to be true and assumed jurisdiction over P.W. The juvenile court issued written findings of fact, and

---

[1] All statutory citations are to RSMo 2016 as currently updated, unless otherwise stated.

conclusion of law entering judgment assuming jurisdiction and denying the Motion to Dismiss ("Judgment").

A case review hearing was held September 20, 2019. At that hearing, the court denied parents' Motion for New Trial. But the court also approved the Juvenile Office's request for trial home placement.

On September 24, 2019, Mother and Father filed a notice of appeal from the Judgment. The juvenile court, however, granted the Juvenile Office's Motion to Close the Case and terminate jurisdiction over P.W. on October 30, 2019, returning P.W. to the custody of her parents. This appeal proceeded despite custody of P.W. being returned to Mother and Father and the termination of jurisdiction by the juvenile court.

**Discussion**

Mother and Father's sole point on appeal alleges that the juvenile court erred in finding that there was sufficient evidence to demonstrate that P.W. was without proper care, custody, or support. However, prior to addressing Mother's and Father's allegation of error, we must address the Juvenile Office's contention that we should dismiss this appeal as moot. On October 30, 2019, after the notice of appeal was filed, the juvenile court terminated jurisdiction over P.W. and closed the case.[2] The Juvenile Office contends that because P.W. has been returned to the care and custody of her parents, the juvenile

---

[2] The order granting the Juvenile Office's motion to close the case and ordering P.W. released from the jurisdiction of the juvenile court is provided in Mother and Father's Appendix which is not part of the Legal File. *In re Marriage of Weinshenker*, 177 S.W.3d 859, 864 (Mo. App. E.D. 2005) ("Documents attached to a party's brief that are not part of the legal file are not considered on appeal.") However, "[i]n determining mootness, the appellate court may consider facts outside the record." *In Interest of J.T.S.*, 462 S.W.3d 475, 478 (Mo. App. W.D. 2015) (quoting *State ex rel. Mo. Gas Energy v. Pub. Serv. Comm'n*, 224 S.W.3d 20, 25 (Mo. App. W.D. 2007)). Further, the fact that P.W. was returned to the custody of Mother and Father, the case was closed, and jurisdiction was terminated by the juvenile court is not disputed by the parties.

4

court has closed the case, and the juvenile court no longer retains jurisdiction over P.W., this appeal is moot.

"A threshold question in any appellate review is the mootness of the controversy." *M.T. v. Juvenile Officer*, 431 S.W.3d 539, 542 (Mo. App. E.D. 2014) (quoting *State ex rel. Reed v. Reardon*, 41 S.W.3d 470, 473 (Mo. banc 2001)). "[A] cause of action is moot when the question presented for decision seeks a judgment upon some matter which, if the judgment was rendered, would not have any practical effect upon any then existing controversy." *Id.* Generally speaking, there are two exceptions to the mootness doctrine. *Id*. at 542-43. First, when a case becomes moot after submission of the case in the appellate court and second, when the issue raised has general public interest and importance and is likely to recur but otherwise evade review. *Id.*; *In the Interest of J.T.S.*, 462 S.W.3d 475, 478-79 (Mo. App. W.D. 2015). In *M.T.*, the Eastern District of this Court purported to recognize a third exception to the mootness doctrine that allows a court to review an otherwise moot appeal "if the decision could have significant collateral consequences for one or more of the parties." *M.T.*, 431 S.W.3d at 543, (citing *Glover v. Michaud*, 222 S.W.3d 347, 351 (Mo. App. S.D. 2007)). This Court disagreed with the pronouncement of *M.T.* recognizing a third mootness exception under *Glover,* instead reiterating that there are only two narrow exceptions to mootness. *In Interests of J.T.S.*, 462 S.W.3d at 479-80.

The Supreme Court has recently suggested expansion of these two narrow exceptions in *D.C.M. v. Pemiscot County Juvenile Office*, 578 S.W.3d 776, 781 (Mo. banc 2019). In *D.C.M.,* a juvenile was charged with what, if the act had been committed by an adult, would have constituted the felony of making a terrorist threat. *Id.* at 779. Prior to

5

the submission of his appeal, D.C.M. turned 18 and was released from the supervision of the juvenile court. *Id.* at 780. D.C.M. and the Juvenile Office both urged the Court to decide the case on its merits--including a sufficiency of the evidence claim--because a record of D.C.M.'s adjudication would remain despite the release from supervision of the juvenile court. *Id.* at 781. Specifically, the Court noted that his juvenile records for the specific offense would be open to the public, D.C.M. might be obligated to disclose the adjudication for certain jobs, and the adjudication could be used against him if he is ever tried for a future criminal offense. *Id.* The Court ultimately determined that "D.C.M. should be given the opportunity to remove the discredit and stigma associated with his record of adjudication" and accordingly addressed the merits of his appeal. *Id.* Certainly, the Supreme Court's opinion in *D.C.M.* recognizes that, in the narrow context of juvenile delinquency adjudications, there now exists an additional exception to the mootness doctrine. Specifically, that appellate courts may review a juvenile's claim that the court erred in entering an adjudication of delinquency where the issue has otherwise become moot because the juvenile reached the age of majority before the submission of the appeal if collateral consequences may flow from the adjudication.[3]

We do not dispute that the arguments for this Court to decide this case on its merits are somewhat similar to that in *D.C.M.* This appeal was rendered moot during its pendency based on actions outside the control of Mother and Father that leave them with the collateral consequences of the juvenile court's adjudication without benefit of appellate review.

---

[3] *But, see Interest of D.R.C.*, 588 S.W.3d 527, 533 (Mo. App. E.D. 2019) (declining to address the merits of the appeal and finding the issue still moot because the juvenile admitted committing the charged offenses, and thus, the collateral-consequences concerns were not at issue).

However, the Supreme Court in *D.C.M.* made no signal that it intended to expand the exception beyond the opinion's very limited application to adjudications of delinquency where the juvenile had aged out of supervision. In fact, although the Court decided the merits of the appeal, it reiterated that there only exist "two narrow exceptions to the mootness doctrine." *Id.* at 780. The Court also specifically rejected the "so-called 'significant collateral consequences' exception to the mootness doctrine" which had been recognized by appellate courts in Missouri. *Id.* at n. 7. Without a clear pronouncement from the Supreme Court that it intends to more broadly create an exception to the mootness doctrine for all cases involving collateral consequences, we decline to expand this new exception beyond juvenile adjudications of delinquency.[4] Instead, we reiterate our finding in *In Interests of J.T.S.* that, despite *Glover*, and outside of juvenile delinquency adjudications, there are only two recognized exceptions to the mootness doctrine.

Mother and Father contend that they seek this appeal, not to secure custody of P.W., but to be relieved from the mandatory registration requirement of section 210.118. Section 210.118.1 states, in relevant part, that:

> [I]n any action under chapter 210 or 211 in which the court finds by a preponderance of the evidence that a party is responsible for child abuse or neglect, as those terms are defined in section 210.110, the clerk *shall* send a certified copy of the judgment or order to the children's division and to the appropriate prosecuting attorney. Upon receipt of the order, the children's division shall list the individual as a perpetrator of child abuse or neglect in the central registry.

(emphasis added).

---

[4] We specifically note here that it is not the juvenile, or newly minted adult as it were, that is subject to the collateral consequences in the case before us.

Mother and Father do not present any argument that they fit into one of the two exceptions to the mootness doctrine.[5] They contend only that reversal should be granted to relieve them from the collateral consequences of registration under 210.118. It is not unique that a party may not have a right to appeal despite being subject to collateral consequences. For example, a suspended imposition of sentence is not a final judgment from which an appeal may be taken and yet a party may face significant collateral consequences. *State v. Bone*, 447 S.W.3d 757 (Mo. App. E.D. 2014) (dismissing appeal of a suspended imposition of sentence despite defendant's argument that there were collateral punitive consequences).

We are cognizant of the fact that in some cases an alleged perpetrator of child abuse or neglect may be prejudiced by the fact that they are unable to seek reversal of the judgment against them, and thereby avoid the registration requirements of section 210.118, simply because the juvenile court quickly returned custody of a child to the party and ended its jurisdiction. However, the Missouri legislature is well aware of how to draft into a statute the right of appeal where it may not otherwise exist and did not do so here. *See, e.g.,* Section 455.007 ("Notwithstanding any other provision of law to the contrary, the public interest exception to the mootness doctrine shall apply to an appeal of a full order of protection which has expired."). Nor did the Supreme Court take the opportunity in *D.C.M.* to broadly or specifically adopt a third exception to the mootness doctrine for

---

[5] The first exception does not apply because the juvenile court has closed the case and terminated its jurisdiction before the case was submitted by this Court, and even prior to the appellant's brief being filed. As to the second exception, the point on appeal—whether there were sufficient facts to support a finding that Mother and Father did not provide proper care, custody, and support for P.W.—involves facts unique to this case that are not of general public importance and are not likely to evade review in future litigation.

decisions that could have significant collateral consequences for one or more of the parties. Instead, it reiterated that there are only two narrow exceptions to the mootness doctrine and showed no intent for the broad application of *D.C.M.* As such, we find that this appeal is moot and this Court has no authority to conduct a review of its merits.[6]

## Conclusion

We find that Mother and Father's appeal is moot and dismiss the appeal without reaching its merits. Appeal dismissed.

_____
Gary D. Witt, Judge

All concur.

---

[6] Although we decline to review Mother's and Father's case on the merits, we note that a cursory review of the record indicates that there was sufficient evidence to support the juvenile court's findings.